GARY B., by his father and next friend, Donald B., et al., Plaintiffs,

v.

Joseph M. CRONIN, State Superintendent of Education, et al., Defendants.

No. 79 C 5383.

United States District Court, N. D. Illinois, E. D.

June 10, 1980.

On Motion for Preliminary Injunction July 17, 1980.

On Motion for Attorneys' Fees March 23, 1982.

Schwartzberg, Barnett & Cohen, Susannah Smith, Wallace C. Winter, Legal Advocacy Service, Jeffrey Gilbert, Eighteenth St. Legal Service, Legal Asst. Foundation of Chicago, Chicago, Ill., for plaintiffs.

John M. Collins, Alan E. Grischke, Asst. Atty. Gen., Julia Dempsey, David Thompson, Bernetta Bush, William A. Wenzel, Ill. Sp. Asst., Atty. Gen., Eugene E. Gozdecici, Beverly J. Klein, Mayer, Brown & Platt, Chicago, Ill., for defendants.

R. A. Salomon, Marcia Doane, Schuyler, Ballard & Cohen, Chicago, Ill., for Robert DeVito, M.D.

Eugene J. Schiltz, Mark Weber, Mandel Legal Aid Clinic, Chicago, Ill., for petitioner Lester P. by his parents and next friends Richard P. and Marilyn P.

## MEMORANDUM OPINION AND ORDER

McGARR, Chief Judge.

Plaintiffs in this action are emotionally disturbed children who allege that they attend private schools because the Illinois public schools do not have special education facilities for them. They seek declaratory and injunctive relief with respect to a rule adopted by the Governor's Purchased Care Review Board ("GPCRB"). Defendants are various state education officials, five of whom seek dismissal. For the reasons stated herein, defendants' motion to dismiss is granted in part and denied in part. (The court previously announced that defendants' motion would be denied *in toto.* *Sua sponte,* the court has reconsidered and concludes that certain of plaintiffs' claims must be dismissed.)

The complaint alleges that the challenged rule, Rule 3.21(c) of the GPCRB, excludes counseling and therapeutic services from being considered special education or related services, which the state must provide for handicapped children. It further alleges that the state's failure to provide these services: 1) deprives plaintiffs of the free appropriate education guaranteed by the Education for All Handicapped Children Act of 1975 ("EAHCA"), 20 U.S.C. §§ 1401–1461 (1976), and the regulations promulgated pursuant to EAHCA; 2) amounts to discrimination in violation of section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794 (1976), and the regulations promulgated pursuant thereto; 3) violates the Due Process and Equal Protection Clauses of the United States Constitution and Article X of the Illinois Constitution; and 4) violates Article XIV of the Illinois School Code, Ill.Rev.Stat. Ch. 122, §§ 14–1.01 to 14.01 (1977 and Supps.1977–78).

Defendants advance numerous contentions in support of their motion to dismiss. Basically, they argue that: 1) plaintiffs do not have standing; 2) the court does not have subject matter jurisdiction; 3) plaintiffs have not stated claims for which relief may be granted; 4) plaintiffs have failed to exhaust administrative remedies; 5) this is an appropriate case for abstention; and 6) the Department of Education is an indispensable party whose absence requires dismissal. Each of these assertions will be discussed.

### I. Standing

Defendants contend that plaintiffs lack standing to bring this action because Rule 3.21 applies only to the schools. Therefore, defendants maintain, this dispute is between the state and the schools.

Defendants cite *Windward School v. New York*, 551 Educ. Handicapped L.Rep. 221 (S.D.N.Y.1978), in support of their argument. In that case, the plaintiffs (handicapped children, their parents, and a private school) apparently sought an order enjoining the State of New York from disapproving the school as a publicly funded special education facility, without first conducting a due process hearing pursuant to 20 U.S.C. § 1415 (1976). The court refused to grant a preliminary injunction, finding that there was not a reasonable likelihood of success on the merits because it was doubtful that § 1415 applied when an entire school was disapproved. 551 Educ. Handicapped L.Rep. at 223. The court also stated that approving a school for public funding was

solely the state's determination; thus, the issue could not logically be the subject of a hearing between the local school district and the parents. *Id.* at 222–23.

This case differs fundamentally from the *Windward School* case. In *Windward School*, the state was not attempting to cut off the children's right to special education or related services. The district court specifically noted that the state was providing other schools that were "adequate to meet the needs of the individual child." *Id.* at 223. In this case, plaintiffs allege that they are being completely deprived of publicly funded therapeutic counseling services; thus, unlike New York in the *Windward School* case, Illinois allegedly is not providing alternative services.

■ Moreover, plaintiffs here, as handicapped students, would be the beneficiaries of the counseling services provided by the schools. Thus, the state's refusal to pay for such services means that the children or their parents must either incur the costs or go without the counseling services. Plaintiffs, therefore, do have "a personal stake in the outcome of the controversy," *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962), and defendants' argument on standing must be rejected.

## II. Subject Matter Jurisdiction

The complaint avers that this court has jurisdiction pursuant to 20 U.S.C. § 1415 (1976) and 28 U.S.C. §§ 1331, 1343 (1976). Defendants challenge this jurisdictional statement. The court finds that jurisdiction is based on 28 U.S.C. §§ 1331(a), 1343(3), (4) (1976).

### A. 28 U.S.C. § 1331(a) (1976).

Under 28 U.S.C. § 1331(a) (1976), the district courts have original jurisdiction over all civil actions in which the amount in controversy exceeds $10,000 and which arise under the Constitution, laws, or treaties of the United States. Defendants contend that the amount in controversy in this case does not exceed $10,000, thereby precluding jurisdiction under § 1331. The court disagrees.

■ Plaintiffs seek injunctive relief; thus, the jurisdictional amount is measured by "the value of the right to be protected or the extent of the injury to be prevented." *United States v. Chicago*, 549 F.2d 415, 424 (7th Cir.), *cert. denied sub nom. Adams v. Chicago*, 434 U.S. 875, 98 S.Ct. 225, 54 L.Ed.2d 155 (1977). The complaint alleges that plaintiffs are deprived of counseling services which range in cost from $4,000 to $5,400 per year. The value of the right to be protected is not limited to the cost of the services for only one year, however. Rather, as plaintiffs are under age twenty-one (the age of majority under Ill.Rev.Stat. Ch. 122 §§ 14–1.02 to .08 (1977) and 20 U.S.C. § 1412(2)(B) (1976)), should they prevail on the merits, they may benefit for several years. Counseling services for two or three years certainly will exceed $10,000. Moreover, plaintiffs allege that they are being deprived of a free appropriate education. The value of education is, of course, difficult to assess, but the court is willing to assume it exceeds $10,000. Accordingly, the court finds that the requisite amount in controversy is present.

■ The court also finds that plaintiffs have raised a substantial federal question, *i.e.*, whether Illinois is complying with EAHCA, the Rehabilitation Act, and the Constitution. Hence, plaintiffs have satisfied the second requirement under § 1331(a), *i.e.*, that the action arise under the Constitution, laws, or treaties of the United States. Therefore, the court has jurisdiction pursuant to 28 U.S.C. § 1331(a) (1976).

### B. 28 U.S.C. § 1343 (1976).

Plaintiffs also allege, and defendants also dispute, that jurisdiction is based on 28 U.S.C. § 1343. Because subsections one and two of that statute deal with conspiracy, which has not been alleged here, the court assumes plaintiffs are relying only on subsections three and four. Under subsection three, the district courts have jurisdiction over actions which have been brought to redress the deprivation, under color of

state law, of any right, privilege or immunity secured by the Constitution or by any Act of Congress providing for equal rights. 28 U.S.C. § 1343(3) (1976). Subsection four provides that the district courts have jurisdiction over actions which have been brought to "recover damages or secure equitable or other relief under any Act of Congress providing for the protection of civil rights...." *Id.* (4).

Defendants argue that this action does not involve an Act of Congress providing for equal rights or protecting civil rights. The court rejects defendants' argument.

Defendants rely on *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), to support their position. In *Chapman,* the Supreme Court held that jurisdiction under 28 U.S.C. § 1343(3), (4) (1976) does not encompass "a claim that a state welfare regulation is invalid because it conflicts with the Social Security Act." 441 U.S. at 603, 99 S.Ct. at 1908. In reaching that conclusion, the Court found that neither 42 U.S.C. § 1983 (1976) nor the Social Security Act, 42 U.S.C. §§ 301, *et seq.* (1976), is an act of Congress providing for equal rights within the meaning of § 1343(3) or providing for the protection of civil rights within the meaning of § 1343(4). 441 U.S. at 618, 621, 623, 99 S.Ct. at 1916, 1917, 1918.

Although the Court was not considering and made no finding with respect to EAHCA, defendants contend that the *Chapman* holding applies in this case. Support for defendants' position is found in the Court's statement that:

The Congress that enacted § 1343(3) was primarily concerned with providing jurisdiction for cases dealing with racial equality; the Congress that enacted § 1343(4) was primarily concerned with providing jurisdiction for actions dealing with the civil rights enumerated in 42 U.S.C. § 1985, and most notably the right to vote. While the words of these statutes are not limited to the precise claims which motivated their passage, it is inappropriate to read the jurisdictional provisions to encompass new claims which fall

well outside the common understanding of their terms.

441 U.S. at 621, 99 S.Ct. at 1917 (footnote omitted). The Court also stated, however, that "while an Act of Congress must in fact deal with equal or civil rights to support jurisdiction under § 1343, it need not be stated only in terms of racial equality." *Id.* at 622–23 n. 41, 99 S.Ct. at 1916–17 n. 41. Hence, it is clear that while the Court wished to emphasize the limits of jurisdiction under § 1343, it did not intend to restrict § 1343 to actions under statutes dealing with racial equality or with those rights protected by 42 U.S.C. § 1985 (1976) (which provides a remedy in damages for deprivations of civil rights resulting from a conspiracy).

The issue here, then, is simply whether EAHCA and/or the Rehabilitation Act provide for equal rights or the protection of civil rights within the meaning of § 1343 as interpreted by the *Chapman* Court. The court concludes that EAHCA is such an act.

The purpose of EAHCA is:

... to assure that all handicapped children have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, to assure that the rights of handicapped children and their parents or guardians are protected, to assist States and localities to provide for the education of all handicapped children, and to assess and assure the effectiveness of efforts to educate handicapped children.

Pub.L. 94–142, § 3(c), 89 Stat. 775 (1975). The legislative history also indicates that the Act was intended to provide for equal rights. For example, the Senate Report states:

This Nation has long embraced a philosophy that the right to a free appropriate public education is basic to equal opportunity and is vital to secure the future and the prosperity of our people... It is this Committee's belief that the Congress must take a more active role under its responsibility for equal protection of the laws to guarantee that handicapped chil-

dren are provided equal educational opportunity. It can no longer be the policy of the Government to merely establish an unenforceable goal requiring all children to be in school. [The bill] takes positive necessary steps to ensure that the rights of children and their families are protected.

S.Rep.No.94–168, 94th Cong., 1st Sess. 9, *reprinted in* 1975—2 U.S.Code Cong. and Adm.News 1425, 1433. Moreover, statements made by various senators during the Conference Report on the Senate bill (which was passed in lieu of the House bill) support the finding that EAHCA provides for equal rights. Note, for example, the remarks of Senator Williams (author of the Senate bill and chairperson of the Labor and Public Welfare Committee):

> The Constitution provides that all people shall be treated equally, but we know that, while all youngsters have an equal right to education, those who live with handicaps have not been accorded this right. This measure fulfills the promise of the Constitution that there shall be equality of education for all people, and that handicapped children no longer will be left out.

121 Cong.Rec. 37409, 37413 (1975).

■ Given the Act's purpose and history, the court can only conclude that EAHCA provides for equal rights and the protection of civil rights within the meaning of § 1343(3), (4). Accordingly, the court has jurisdiction over the EAHCA claims pursuant to 28 U.S.C. § 1343(3), (4) (1976). *Accord, Cruz v. Collazo,* 84 F.R.D. 307 (D. Puerto Rico 1979).

### III. Stating A Claim For Which Relief May Be Granted

Defendants argue that the complaint should be dismissed pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim for which relief may be granted. They make this assertion with respect to plaintiffs' claims under EAHCA, the Rehabilitation Act, the Fourteenth Amendment, and the Illinois Constitution. The court finds that the complaint states a claim for relief under EAHCA, the Rehabilitation Act, and the Equal Protection Clause of the Fourteenth Amendment, but not under the Due Process Clause of the Fourteenth Amendment or the Illinois Constitution.

### A. EAHCA

Defendants contend that plaintiffs fail to state a claim under EAHCA because Rule 3.21 "does not operate to deny handicapped children an education but only to limit what may reasonably be considered as 'related services' to special education programs." Defendants DeVito and Miller's Memorandum of Law in Support of Their Motion to Dismiss at 42 (filed March 18, 1980) ("Defendants' Memo"). Defendants' own words focus on the issue in this case: whether counseling and therapeutic services are related services.

■ There is no dispute that plaintiffs are entitled to a free appropriate education. EAHCA defines "free appropriate education" as special education and related services. If counseling and therapeutic services are related services, then they are components of the free appropriate education to which plaintiffs are entitled. By asserting that they are not related services, defendants are arguing the merits of the case. The court, of course, does not decide the merits on a motion to dismiss. It only determines whether the allegations in the complaint, taken as true, state a claim for relief. Here, the complaint alleges that counseling and therapeutic services are related services. Related services are to be provided under 20 U.S.C. §§ 1412, 1414 (1976). Plaintiffs, therefore, have stated a claim under EAHCA.

### B. The Rehabilitation Act

Defendants contend that plaintiffs have failed to state a claim under § 504 of the Rehabilitation Act. That section provides: "No otherwise qualified handicapped individual in the United States . . . shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under

any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794 (1976) (amended 1978). At least one court has found that the Act imposes a duty on school districts to devise a program that enables each individual handicapped student to receive a free appropriate education. *Doe v. Marshall*, 459 F.Supp. 1190, 1191 (S.D.Tex.1978). That case, however, was decided before the Supreme Court's ruling in *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), which should be considered here.

In *Davis*, the Court found that section 504 did not compel a nursing school to significantly change its program and lower its standards in order to admit a deaf applicant. 442 U.S. at 413–14, 99 S.Ct. at 2370–71. The respondent argued that one of HEW's regulations (45 C.F.R. § 84.44) required extensive modifications of the school's program in order to accommodate respondent's special needs. 442 U.S. at 409–10, 99 S.Ct. at 2368–69. After rejecting respondent's interpretation of the regulation, the Court found that if the regulation did require substantial adjustments beyond those necessary to eliminate discrimination, it would be invalid. *Id.*

The Court reached this conclusion by analyzing the Rehabilitation Act. Writing for the Court, Justice Powell noted that Congress recognized "the distinction between the evenhanded treatment of qualified handicapped persons and affirmative efforts to overcome the disabilities caused by handicaps." *Id.* at 410, 99 S.Ct. at 2369. Because section 501(c) of the Act only encourages state agencies to implement affirmative action policies, whereas sections 501(b) and 503(a) require federal agencies to take affirmative action to hire the handicapped, the Court decided that section 504 was not intended "to impose an affirmative action obligation on *all* recipients of federal funds." 442 U.S. at 411, 99 S.Ct. at 2369 (emphasis added). Therefore, the Court held that HEW lacks the authority to create such a duty through its regulations.

Justice Powell did state, however, that the Court was not suggesting:

that the line between a lawful refusal to extend affirmative action and illegal discrimination against handicapped persons always will be clear... [S]ituations may arise where a refusal to modify an existing program might become unreasonable and discriminatory. Identification of those instances where a refusal to accommodate the needs of a disabled person amounts to discrimination against the handicapped continues to be an important responsibility of HEW.

442 U.S. at 412–13, 99 S.Ct. at 2370–71. Thus, the question raised by *Davis* is whether the regulations applicable in this case exceed HEW's authority. This court concludes that they do not.

As noted above, the *Davis* Court acknowledged HEW's responsibility to identify those instances where a refusal to accommodate the needs of the disabled amounts to discrimination. HEW has, in fact, promulgated fairly extensive regulations with respect to education of the handicapped under section 504. The regulations provide that a recipient of federal funds who operates elementary or secondary schools shall provide a free appropriate education to each qualified handicapped person in the recipient's jurisdiction. 45 C.F.R. § 84.33(a) (1979). Appropriate education is defined as one that is designed to meet the needs of the handicapped student as adequately as the needs of the non-handicapped students are met. *Id.* § 84.33(b); see also 45 C.F.R. Part 84, App. A, Subpart D, ¶ 23 at 387–88 (1979). Free education is defined as the provision of educational and related services without cost except for those fees that are imposed on non-handicapped persons or their parents or guardians. 45 C.F.R. § 84.33(c)(1) (1979). Further, non-academic services are to be provided at no cost to the handicapped student or his parents or guardian when residential placement is necessary for the handicapped student to obtain an appropriate education. *Id.* § 84.-33(c)(3). The regulations also provide that when counseling services are provided to a recipient's students, they are to be offered

to the handicapped in such a manner as to afford them an equal opportunity for participation. *Id.* § 84.37(b).

At first blush, HEW's authority to promulgate these regulations, which appear to impose an affirmative action obligation on the state as a recipient of federal funds, is called into question under *Davis*. Two earlier Supreme Court cases, however, should also be considered in analyzing this issue.

The *Davis* Court did not refer to *Lau v. Nichols*, 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974) or *Campbell v. Kruse*, 434 U.S. 808, 98 S.Ct. 38, 54 L.Ed.2d 65 (1977) (*mem.*). In *Lau*, the Supreme Court found that San Francisco's failure to provide special English language instruction to Chinese-speaking students amounted to discrimination under section 601 of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (1976). Thus, the Court authorized the provision of special services for Chinese students to overcome the language barrier. In *Campbell*, the Court directed the district court to decide a claim based on section 504 of the Rehabilitation Act in a suit challenging as inadequate Virginia's system of financing special education. Hence, the Court recognized that claims of discrimination because of inadequate funding are cognizable under section 504.

■ Reading *Davis* with *Lau* and *Campbell*, this court concludes that a balancing test is appropriate with respect to HEW's regulations under section 504. HEW, of course, has the task of identifying those cases where failure to act constitutes discrimination and may promulgate regulations imposing affirmative duties on recipients of federal funds, provided those duties do not become so burdensome as to significantly lower the recipient's standards.

In this case, the regulations are designed to ensure that handicapped students will not be deprived of the benefits of education. For purposes of this motion, the court assumes that the regulations are not overly burdensome and are therefore valid. Accordingly, plaintiffs' allegations will be considered in light of the regulations.

Plaintiffs allege that without therapeutic counseling, they are unable to attend the schools that have been recommended by plaintiffs' school districts as suitable for plaintiffs' needs. Therefore, plaintiffs contend that the failure to provide therapeutic counseling deprives them of an appropriate education, *i.e.*, their needs are not being met as adequately as are the needs of non-handicapped students. This is a sufficient claim of discrimination under the Rehabilitation Act and HEW's regulations.

Defendants contend that counseling must be provided at no cost to plaintiffs only if it is also provided to non-handicapped students. While 45 C.F.R. § 84.37 lends credence to this position, the court cannot overlook § 84.33 and App. A, which may be construed as requiring free therapeutic counseling when the student needs it in order to learn.

Defendants also argue that plaintiffs have not shown that they need residential placement because of their handicap rather than their homelife. Plaintiffs do allege that residential placement was recommended on the basis of their handicaps. *See* Complaint ¶¶ 7–12 (No. 79 C 5383 filed Dec. 21, 1979).

Finally, defendants contend that the holding in *Tatro v. Texas*, 481 F.Supp. 1224 (N.D.Tex.1979) applies here. In that case, Judge Higginbotham found that the Rehabilitation Act does not require a school to provide catheterization to a student. That case is factually distinguishable. Catheterization is a medical, non-diagnostic procedure, not considered a related service under HEW's regulations. While it may enhance a student's ability to learn, it is not a prerequisite. Here, plaintiffs contend that without therapeutic counseling, they are unable to receive an appropriate education. *Tatro*, therefore, is not applicable.

■ In short, the court has considered carefully whether plaintiffs have stated a claim for relief under the Rehabilitation Act. The court concludes that they have. Accordingly, defendants' motion to dismiss that claim is denied.

## C. Equal Protection

Relying on *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), defendants assert that Rule 3.21 does not violate the Equal Protection Clause because it neither involves invidious discrimination against a suspect class nor impinges a fundamental right. In *Rodriguez*, the Supreme Court held that the Texas system of financing public education did not violate the Equal Protection Clause. The Court refused to apply the "strict scrutiny" standard of review to the challenged system of financing. To apply such a standard, there must be a showing that the law either discriminates against a suspect class or impinges a fundamental right.

The Court cited the traditional characteristics of a suspect class: it has been "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." 411 U.S. at 28, 93 S.Ct. at 1293. Another mark of a suspect class is possession of "an immutable characteristic determined solely by the accident of birth [which] frequently bears no relation to ability to perform or contribute to society." *Frontiero v. Richardson*, 411 U.S. 677, 686, 93 S.Ct. 1764, 1770, 36 L.Ed.2d 583 (1973). Finding that those who were alleging discrimination in *Rodriquez* were an undefinable group of poor, who did not possess the usual indicia of a suspect class, the Court concluded that the Texas system did "not operate to the peculiar disadvantage of any suspect class." 411 U.S. at 28, 93 S.Ct. at 1293.

The Court also found that education is not a fundamental right requiring strict scrutiny. Thus, the Court concluded that the traditional standard of review should be applied, *i.e.*, whether the state's system bore some rational relation to a legitimate state purpose. After considerable examination of the state's system, the Court held that it satisfied this standard. 411 U.S. at 55, 93 S.Ct. at 1308.

Defendants contend that under *Rodriquez*, the standard to be applied here is the rationality test and that Rule 3.21 is rationally related to a legitimate state purpose.

In response, plaintiffs cite cases in which the courts found that an allegation of the state's failure to provide a minimally adequate education states a claim under the Equal Protection Clause. *See, e.g., Frederick L. v. Thomas*, 408 F.Supp. 832 (E.D.Pa. 1976), *aff'd* 557 F.2d 373 (3d Cir. 1977); *Fialkowski v. Shapp*, 405 F.Supp. 946 (E.D. Pa.1975). Those cases indicate that an intermediate standard of review might be appropriate with respect to laws affecting education of the handicapped. *Cf. Sterling v. Harris*, 478 F.Supp. 1046 (N.D.Ill.1979) (holding that a statute excluding residents of public mental health institutions from the Supplemental Security Income Program, 42 U.S.C. § 1381–1383(c) (1976), required an intermediate level of scrutiny).

It is unnecessary at this time to decide what standard of review applies in this case. The court must only determine whether the complaint states a colorable claim under the Equal Protection Clause. The complaint alleges that Rule 3.21, in effect, deprives plaintiffs of a free appropriate education to which they are entitled, while not so affecting non-handicapped children. This sufficiently states a claim for relief. Defendants' argument on the rule's rationality delves into the merits, which the court does not consider on a motion to dismiss. Accordingly, defendants' motion to dismiss the Equal Protection claims is denied.

## D. Due Process

Defendants also contend that plaintiffs have not stated a claim for relief under the Due Process Clause. The court agrees and dismisses plaintiffs' Due Process claims.

Plaintiffs contend that defendants' failure to provide notice and a hearing before adopting Rule 3.21 violates procedural due process. This argument is not persuasive. Notice and a hearing would be required

only if defendants terminated the right to benefits of some, but not all members of the class.

Plaintiffs also argue that because they have a legitimate claim of entitlement to a free education, they cannot be deprived of an education without being given notice and a hearing. Because they allege that the effect of Rule 3.21 is to deprive them of an education, plaintiffs contend that they are entitled to notice and a hearing. The court rejects this argument.

Although the effect of Rule 3.21 might be that plaintiffs are unable to receive an appropriate education within the meaning of EAHCA and the Rehabilitation Act, to assert that the state must provide notice and a hearing to all students who receive certain services before terminating those services expands the Due Process Clause farther than it was intended. Accordingly, plaintiffs have not stated a claim for which relief may be granted under the Due Process Clause and their Due Process claims are dismissed.

**E. Article X of the Illinois Constitution**

Defendants contend that plaintiffs have not stated a claim for relief under Article X of the Illinois Constitution. That article provides in part: "The State shall provide for an efficient system of high quality public educational institutions and services. Education in public schools through the secondary level shall be free. There may be such other free education as the General Assembly provides by law." Ill.Const. art. X, § 1 (1970).

■ The Illinois courts have held that Article X mandates only that the state provide a tuition-free education. *See, e.g., Hamer v. Board of Education of School District No. 109,* 9 Ill.App.3d 663, 292 N.E.2d 569 (2d Dist. 1973). No cases have been uncovered which indicate that a tuition-free education under Article X includes

the provision of counseling services. Thus, plaintiffs have not stated a claim for relief under Article X of the Illinois Constitution. Accordingly, the court dismisses plaintiffs' claim under Article X.

**IV. Exhaustion of Remedies**

Defendants assert that the claims under EAHCA and the Rehabilitation Act should be dismissed because plaintiffs have not exhausted their administrative remedies. Defendants' arguments are rejected for the reasons that follow.

**A. EAHCA**

Defendants' argument under EAHCA is based on 20 U.S.C. § 1415. That section provides that the state or local educational agency is to conduct a hearing on complaints about procedures employed by the state or local educational agency. It also provides that any party aggrieved by the administrative findings may bring a civil action in state or federal court, without regard to the amount in controversy. 20 U.S.C. § 1415 (1976).

None of the plaintiffs has attempted to exhaust the administrative remedies prescribed by § 1415. Ordinarily, this would require dismissal. In this instance, however, there is a question whether Illinois has established an administrative process offering meaningful review. If an exhaustion attempt would be futile, the complaint need not be dismissed for failure to exhaust administrative remedies. *See Armstrong v. Kline,* 476 F.Supp. 583, 601–02 (E.D.Pa. 1979) and cases cited therein.

■ The Illinois Superintendent of Education has stated that the Illinois State Board of Education is "not the appropriate forum to address issues relating to the [GPCRB's] determinations of allowable cost for related services."[1] *In re Special Education Placement of Cathy S.,* Administrative Order at 3 (Ill.Bd.Educ. Oct. 17, 1979) (at-

---

1. Cathy S. sought review by the Illinois Superintendent of Education of a decision regarding residential placement and related services. During the pendency of this motion, she was voluntarily dismissed as a plaintiff. Because

the Superintendent's decision is an exhibit to the complaint, the court will consider it for the purpose of determining whether there exists a meaningful mechanism of administrative review in Illinois.

tached as Exhibit B to Complaint). Defendants have not indicated that there is, in fact, an administrative forum in Illinois in which to review the GPCRB's determinations of related costs. Nor does the statute creating the GPCRB establish an administrative review process. Ill.Rev.Stat. Ch. 122, § 14–7.02 (Supp.1978). Thus, the court concludes that Illinois has not established a meaningful process of administrative review and excuses plaintiffs' failure to exhaust administrative remedies under EAHCA.

## B. The Rehabilitation Act

Similarly, plaintiffs have not exhausted administrative remedies under the Rehabilitation Act. To invoke those remedies, a party may file a written complaint with HEW, which is then required to make a prompt investigation. 45 C.F.R. § 80.-7(b)(c) (1979). If HEW finds that a recipient of federal funds has failed to comply with the Act, HEW may enforce compliance by 1) cutting off federal funds, 2) referring the case to the Department of Justice for prosecution, or 3) proceeding under applicable state or local law. 45 C.F.R. §§ 80.6–80.10, 84.61 (1979).

Plaintiffs contend that under *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), exhaustion is not required. In *Cannon*, the Supreme Court found an implied private right of action under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 (1976). Plaintiffs rely on a footnote to the Court's opinion in which the Court, discussing Title IX and Title VI (the administrative remedies for which apply in Rehabilitation Act cases, *see* 45 C.F.R. § 84.61 (1979)), stated: "[W]e are not persuaded that individual suits are inappropriate in advance of exhaustion of administrative remedies. Because the individual complainants cannot assure themselves that the administrative process will reach a decision on their complaints within a reasonable time, it makes little sense to require exhaustion." 441 U.S. at 707–08 n. 41, 99 S.Ct. at 1963–64 n. 41.

Defendants correctly contend that the rule in this circuit was enunciated in *Lloyd v. Regional Transportation Authority*, 548 F.2d 1277 (7th Cir. 1977). In *Lloyd*, the Seventh Circuit Court of Appeals held that an implied private cause of action existed under section 504 of the Rehabilitation Act. 548 F.2d at 1284–87. When *Lloyd* was decided, there was no "administrative remedial machinery . . . to vindicate an affirmative right." *Id.* at 1286. Thus, the court stated that it was leaving open the question whether, after procedural enforcement regulations were issued to implement section 504, the judicial remedy must be limited to review of an agency determination. The court noted, "[A]ssuming a meaningful administrative enforcement mechanism, the private cause of action under Section 504 should be limited to *a posteriori* judicial review." *Id.* n. 29. Following *Lloyd*, then, the issue here is whether the administrative process adopted after *Lloyd* is sufficiently meaningful to impose a strict exhaustion requirement.

Defendants argue that it is. They contend that this case differs from *Cannon* in that the administrative mechanism at issue there did not permit active participation by the complainant in the investigation and/or administrative hearing. Defendants believe that because the complainant in a Rehabilitation Act case may be a witness at an HEW hearing or may petition to be an *amicus curiae*, his participation is active. *See* 45 C.F.R. §§ 81.1, 81.22–.23 (1979). They also contend that because HEW can refer the case to the Justice Department or utilize applicable state or local procedures, the enforcement mechanism is effective.

The court disagrees. First, as the regulations now read, it appears that plaintiffs' participation in any HEW hearings would be minimal. They would, in effect, be considered interested spectators, not active advocates. Further, as other courts have noted, HEW's principal means of effecting compliance is cutting off federal funds to school districts. *Sherry v. New York State Education Department*, 479 F.Supp. 1328, 1333–34 (W.D.N.Y.1979);

*Whitaker v. Board of Higher Education,* 461 F.Supp. 99, 107–08 (E.D.N.Y.1978). In this court's view, cutting off federal funds is not a remedy beneficial to plaintiffs. The court concludes, therefore, that the regulations do not provide the meaningful enforcement mechanism envisioned by the Seventh Circuit in *Lloyd.* Accordingly, plaintiffs' failure to exhaust administrative remedies is excused in this instance. (*See also Camenisch v. University of Texas,* 616 F.2d 127 (5th Cir. 1980) in which the Court of Appeals for the Fifth Circuit held that exhaustion of administrative remedies is not required in suits by private individuals under Section 504 of the Rehabilitation Act.)

## V. Abstention

Defendants argue "that this Court should abstain as to Plaintiffs' claim[s]" under Illinois law. Defendants' Memo at 5. Defendants cite *Nickerson v. Thomson,* 504 F.2d 813 (7th Cir. 1974), in support of their assertion. In that case, the Court of Appeals for the Seventh Circuit found that the district court should not have abstained so that the parties could seek a ruling from the state court. 504 F.2d at 816–17. In reaching its decision, the Seventh Circuit found that there was no uncertain issue of state law; thus, a state court ruling would not avoid or modify the federal constitutional question before the district court. *Id.* at 817. The court of appeals did state that the district court could, however, refuse to exercise pendent jurisdiction over certain state law claims. *Id.*

■ The *Nickerson* court did not discuss the difference between the doctrines of abstention and pendent jurisdiction. Under the former, a federal court may refuse to decide a claim that is properly before it in order to avoid needless resolution of a federal constitutional question or if the state law is unsettled. *See* 17 C. Wright, A. Miller, and E. Cooper, Federal Practice and Procedure §§ 4241–4248 (1978). Under the latter, the court has discretion whether to exercise jurisdiction over claims that do not have an independent basis of federal juris-

diction but which derive from "a common nucleus of operative fact" with the federal claims to which they are pendent. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Thus, when a federal court abstains, it is declining to decide federal claims because of the state law issues, whereas when the court refuses to exercise pendent jurisdiction, it is merely declining to resolve the state law claims.

As stated earlier, defendants have asked this court to "abstain as to Plaintiffs' claim[s]" under the Illinois Constitution and Illinois School Code. Defendants' Memo at 5. Thus, defendants do not seek dismissal of the federal claims, based on abstention, but are actually asking the court not to exercise pendent jurisdiction over the state law claims.

■ The decision to exercise pendent jurisdiction over state law claims is well within the court's discretion. The only requirement is that the issues under state law share "a common nucleus of operative fact" with the federal claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). That requirement has been met here. Other considerations are "judicial economy, convenience and fairness to litigants," *id.* at 726, 86 S.Ct. at 1139, each of which is best served by having this matter resolved in one forum. Of course, "[n]eedless decisions of state law should be avoided ... as a matter of comity." *Id.* Nonetheless, when, as in this case, "the state claim is ... closely tied to questions of federal policy ... the argument for exercise of pendent jurisdiction is particularly strong." *Id.* at 727, 86 S.Ct. at 1139. Considering these guidelines, the court believes that the exercise of pendent jurisdiction is appropriate in this case. Therefore, defendants' argument is rejected. (It might be noted that even if defendants were seeking dismissal of the entire complaint based on abstention, the court would decline to abstain. The federal statutes involved, EAHCA and the Rehabilitation Act, indicate a strong federal policy in favor of educating and rehabilitating the

handicapped. The court believes that abstention would only serve to deprive plaintiffs of a federal forum.)

## VI. Indispensable Party

▮ Defendants' final argument is that the Department of Education is an indispensable party whose absence requires dismissal. Under Rule 19, Fed.R.Civ.P., dismissal is warranted when a person is deemed by the court to be indispensable to the action and cannot be joined as a party. There has been no showing here that the Department of Education could not be joined, even if it were deemed indispensable. Thus, the court has no basis on which to order dismissal and rejects defendants' argument.

## Conclusion

In sum, plaintiffs, emotionally disturbed children, have standing to bring this action challenging Rule 3.21 of the Governor's Purchased Care Review Board. The court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331(a), 1343(3), (4) (1976). The complaint states claims for relief under the Education for All Handicapped Children Act, the Rehabilitation Act and the Equal Protection Clause. The court excuses plaintiffs' failure to exhaust administrative remedies and accepts pendent jurisdiction over plaintiffs' state law claims. As there has been no showing that the Department of Education cannot be joined, there is no need to consider dismissal pursuant to Rule 19, Fed.R.Civ.P. Because plaintiffs have not stated claims for which relief may be granted under the Due Process Clause and Article X of the Illinois Constitution, those claims are dismissed. Accordingly, defendants' motion to dismiss is granted in part and denied in part. Defendants are to answer the complaint within twenty days.

## ON MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs in this action are emotionally disturbed children who allege that they must attend private residential schools because the Illinois public schools do not have special education facilities for them. They seek declaratory and injunctive relief with respect to a rule adopted by the Governor's Purchased Care Review Board ("GPCRB"). Before the court at this time is plaintiffs' motion for a preliminary injunction, which, for the reasons that follow, is granted.

The complaint alleges that the challenged rule, Rule 3.21(c), excludes counseling and therapeutic services from being considered special education or related services which the state must provide for handicapped students. It further alleges that the state's failure to provide these services violates: 1) the Education for All Handicapped Children Act of 1975 ("EAHCA"), 20 U.S.C. §§ 1401–1461 (1976), and the regulations promulgated pursuant to EAHCA; 2) Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794 (1976), and the regulations promulgated pursuant thereto; 3) the Equal Protection Clause of the United States Constitution; and 4) Article XIV of the Illinois School Code, Ill.Rev.Stat. Ch. 122, §§ 14–1.01 to 14.01 (1977 and Supps.1977–78). (The complaint also alleged violations of the Due Process Clause of the United States Constitution and Article X of the Illinois Constitution. In an opinion dated June 10, 1980, however, this court dismissed those claims). Because the court finds that plaintiffs have established a reasonable likelihood of success on the merits with respect to the federal and state statutes, the court will not consider plaintiffs' constitutional claim at this time. Thus, this opinion will consider only the claims under EAHCA, the Rehabilitation Act, and the Illinois School Code.

Plaintiffs request that the court enjoin defendants from: 1) giving force and effect to Rule 3.21 insofar as it denies payment or reimbursement for counseling, therapy, psychological and social work services; 2) failing to pay plaintiffs, or on their behalf, or failing to reimburse local education agencies when they pay, for the cost of therapy, counseling, psychological and social work services; and 3) denying plaintiffs a free appropriate public education.

■ Four prerequisites must be met before a preliminary injunction will be granted. Plaintiffs must show that: 1) they have at least a reasonable likelihood of success on the merits; 2) there is no adequate remedy at law and they will be irreparably harmed if the injunction does not issue; 3) the threatened injury to plaintiffs outweighs the threatened harm the injunction may inflict on defendants; and 4) granting the injunction will not disserve the public interest. *Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore Products, Inc.*, 545 F.2d 1096, 1097 (7th Cir. 1976). The court finds that plaintiffs have satisfied these criteria.

First, plaintiffs have shown a reasonable likelihood of success on the merits. Rule 3.21(c) provides that the following are not considered special education or related services:

> [s]alaries, wages and fringe benefits for staff and fees for consultants not involved in the direct delivery of educational services [including salaries of] social workers insofar as they are involved in therapeutic rather than training programs; psychologists other than school psychologists and psychiatrists (except to the extent that they are providing consulting services to the educational staff of the school).....

GPCRB R. 3.21(c), 3 Ill.Reg. 211, 212 (Oct. 19, 1979). On its face, the rule appears to be inconsistent with the definitions of related services set forth in EAHCA, the regulations promulgated pursuant to the Rehabilitation Act, and the Illinois School Code.

EAHCA defines related services as "including ... psychological services ... and medical and counseling services, except that such medical services shall be for diagnostic and evaluation purposes only as may be required to assist a handicapped child to benefit from special education...." 20 U.S.C. § 1401(17) (1976). The regulations implementing the Rehabilitation Act also include psychological and counseling services as related services. *Compare* 45 C.F.R. §§ 84.33(b) (defining appropriate education) and 84.33(c)(3) (1978) (requiring the provision of non-medical care when residential placement is required) *with* Analysis of Final Regulation, App. A, Subpart D, 45 C.F.R. 402, 413 (1978) (stating that special education may include psychological, counseling and medical diagnostic services). Because Illinois receives federal funds for special education, *see* Exhibit 5 in Defendants Cronin and Muirhead's Partial Response to Defendants DeVito and Miller's Request for Interrogatories (No. 79 C 5383 filed June 5, 1980), it is obligated to comply with EAHCA and the Rehabilitation Act. 20 U.S.C. § 1412 (1976); 29 U.S.C. § 794 (1976). Further, the Illinois School Code defines special educational facilities and services as including therapy, psychological services, school social worker services "and other special educational services ... required by the child because of his disability if such services or special equipment are approved by the State Board of Education...." Ill. Rev.Stat. Ch. 122, § 14–1.08 (Supp.1978). Thus, the federal and state definitions of special education and related services do not limit the provision of counseling and therapeutic services as does Rule 3.21.

Defendants contend that these services must be provided only if they are related to educational needs. Defendants assert that "it is obvious that any psychotherapy that might benefit [plaintiffs] is related to their mental health, not their educational needs." Defendants DeVito and Miller's Response to Plaintiff's Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction ("Defendants' Memo") at 23 (No. 79 C 5383 filed April 25, 1980). The court does not agree with defendants' analysis. While psychotherapy may be related to mental health, it may also be required before a child can derive any benefit from education. As plaintiffs' local school districts have recommended residential placement for them, if psychotherapy is part of the program at the residential schools, it should be provided to plaintiffs at no cost to them or their parents. The legislative history of EAHCA makes this abundantly clear. The Senate Report reads, "States are encouraged to utilize all sources of support for comprehensive services for handicapped students. It

should be emphasized, however, that *in no case should such charges result in cost to the parents or guardian, or the denial or diminition [sic] of services to the child.*" S.Rep.No.94–168, 94th Cong., 1st Sess. 32, *reprinted in* [1975] U.S.Code Cong. & Ad. News 1425, 1456 (emphasis added).

Defendants also assert that "Rule 3.21 does not exclude psychotherapy. It only excludes psychotherapy rendered by a non-qualified person." Defendants' Memo at 23. In support of this assertion, defendants maintain that the rule comports with the rules promulgated by the State Board of Education (Rules and Regulations to Govern the Administration and Operation of Special Education ("Special Education Rules")) and with the Illinois School Code. The court does not so construe Rule 3.21.

First, the court cannot determine, at this time, whether social workers are qualified to provide therapeutic counseling. The deposition of Gary Hahn, Director of the Secondary Program for Niles Township Department of Special Education, indicates, however, that social workers, psychologists, and lay therapists generally provide psychotherapy at the private schools, with psychiatrists serving primarily as consultants. Deposition of Gary Hahn at 131–32 (as corrected) (No. 79 C 5383 filed April 9, 1980). Moreover, the State Board of Education's approval of private schools in which social workers or outside psychologists provide psychotherapy indicates that the State Board of Education has determined that those people are qualified to render such treatment. Finally, neither the Illinois School Code nor the Special Education Rules limit social worker services to counseling for training purposes. In fact, Special Education Rule 1.01c defines counseling services as "services provided by qualified personnel such as: social workers, psychologists, guidance counselors, or other qualified personnel." Special Education Rule 5.01(3) states:

    a.  School social work services shall include, *but no[t] be limited to. . .*

    (3) Direct services to children

    (4) Service to parents on behalf of children. The school social worker shall be responsible *for serving* as a liaison between the home and the school and for providing parental education *and counseling as appropriate in relation to the child's problem. . .*

    c.  School social work services shall be utilized to assist in the process of developing an educational climate conducive to the optimum development of all children. *Emphasis shall be placed on prevention as well as rehabilitation, on indirect as well as direct services.*

Special Education Rule 5.01(3) (emphasis added). From the language of these rules, it appears that if the social worker is qualified as a therapist, he or she may render such therapy. Thus, the court rejects defendants' arguments regarding the need for psychotherapy and the qualifications of the therapists.

Defendants also assert that the local school districts have been improperly recommending residential placement for certain students. This court will not second-guess the local school districts' determinations and evaluations of their students. Such a task presumably belongs to the State Board of Education. This court must only resolve the issue here, *i.e.*, whether Rule 3.21(c) violates federal and state law and, for the reasons just stated, the court finds that plaintiffs have shown at least a reasonable likelihood of success on the merits of this issue.

The second showing that plaintiffs must make is that there is no adequate remedy at law and that they will be irreparably harmed if the injunction does not issue. Defendants maintain that plaintiffs risk only monetary loss, which is insufficient to show irreparable harm. The court disagrees.

Although it would seem that plaintiffs are only seeking funding here, which might be available in the legal remedy of damages, plaintiffs' situation leads the court to conclude that simple money damages would be inadequate. First, computing damages would be extremely difficult because differ-

ent schools inevitably will have different rates and the services required by a child may vary from time to time. Second, schools are threatening to send Illinois students home and are refusing to accept Illinois children because of Rule 3.21(c), unless someone guarantees payment. *See* Affidavits of Albert Michael De Sisto (Director of De Sisto at Stockbridge School in Massachusetts), Sylvester Adessa (Director of Lakeside Children's Center, Inc. in Wisconsin), Patricia P. (mother of plaintiff Karena P.), Jean Smith (Director of Admissions of the Brown Schools in Texas), Sister Rosemary Collins (Administrator of St. Joseph's Carondelet Child Center in Chicago, Illinois) (filed March 14, 1980). As a result, plaintiffs have been placed in mental hospitals which are short-term facilities, have remained at home, or their parents have paid the difference between the GPCRB's funding and the cost of the placement.[1] *See* Affidavits of Brenda P. (mother of plaintiff Patrick H.), Lawrence A. C., Jr. (father of plaintiff Lawrence A. C. III), Donald B. (father of plaintiff Gary B.), Patricia P. (mother of plaintiff Karena P.), Carol K. (mother of plaintiff Christine K.) (filed March 14, 1980). Third, several psychologists and psychiatrists have expressed the belief that plaintiffs are in danger of regression and greater inability to learn because of inappropriate placement. *See* Affidavits of Dr. Helen Morrison (diagnosing Patrick H.), Drs. Michael Downs and Alan Buntman (treating Christine K. at Ridgeway Hospital), Dr. Linda Pollack (evaluating Gary B. at Old Orchard Hospital), Dr. Gerald Abraham (evaluating Lawrence A. C. III) (filed March 14, 1980); *see also* Affidavit of Dr. Clifton J. Saper (diagnosing Christine K.) (filed May 13, 1980). Thus, the circumstances in this case make legal relief inadequate. Additionally, based on the above-cited affidavits, the court concludes that plaintiffs will suffer irreparable injury if the injunction does not issue.

The court also finds that plaintiffs have satisfied the third and fourth prerequisites for a preliminary injunction. Balancing the hardships, the court finds that the greater hardship is on plaintiffs and their families. Denying relief to plaintiffs could result in their inability to benefit from a free appropriate education, whereas granting relief against defendants only imposes an expense on them. Defendants maintain that plaintiffs are currently receiving a free appropriate education either in mental hospitals or private schools. As noted above, however, the hospitals are short-term facilities and certain plaintiffs are in private schools only because their parents are contributing to the cost. Hence, the court is inclined to disagree with defendants.

Similarly, the court finds that the public interest is best served by granting the preliminary injunction. In discussing the background and need for EAHCA, the Senate Report states:

> The long range implications of these statistics are that public agencies and taxpayers will spend billions of dollars over the lifetimes of these individuals to maintain such persons as dependents and in a minimally acceptable lifestyle. With proper education services, many would be able to become productive citizens, contributing to society instead of being forced to remain burdens. Others, through such services, would increase their independence, thus reducing their dependence on society.

> \* \* \* \* \* \*

> One need only look at public residential institutions to find thousands of persons whose families are no longer able to care for them and who themselves have received no educational services. Billions of dollars are expended each year to maintain persons in these subhuman conditions.

---

1. Some parents have received Individual Care Grants from the Illinois Department of Mental Health and Developmental Disabilities ("DMHDD"). These grants are not available to all children in need of special education, how-

ever, *See* Deposition of Dr. Patricia Barger, Director of Child and Adolescent Office of DMHDD at 10–24 (No. 79 C 5383 filed May 9, 1980).

S.Rep.No.94–168, 94th Cong., 1st Sess. 9, *reprinted in* [1975] U.S.Code Cong. & Ad. News 1425, 1433. Thus, while a preliminary injunction may seem to impose an expensive burden on the state, in actuality, it should alleviate the burden.

In conclusion, the court finds that plaintiffs have shown 1) at least a reasonable likelihood of success on the merits, 2) there is no adequate remedy at law and plaintiffs will be irreparably harmed if the preliminary injunction does not issue, 3) they will suffer a greater hardship if injunctive relief is denied than would defendants if relief is granted, and 4) the public interest is best served by issuing a preliminary injunction. Accordingly, plaintiffs' motion is granted. The preliminary injunction is issued only with respect to the named plaintiffs as no class has been certified.

## ON MOTION FOR ATTORNEYS' FEES

This cause is before the court for consideration of plaintiffs' motion for an award of attorneys' fees pursuant to the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988 (1976) [hereinafter "Attorneys' Fees Act"], and the Remedies and Attorneys' Fees provision for Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) (1978) [hereinafter "Section 504 Attorneys' Fees Act"]. The defendants oppose any award of fees or, alternatively, seek reduction of the amount requested by plaintiffs' counsel. Attorneys Winter, Gilbert and Smith seek fees in the amount of $61,662.00 and $1,174.95 for costs. The law firm of Schwartzberg, Barnett & Cohen seeks fees in the amount of $48,903.75 and $113.80 for costs. For the reasons stated below, plaintiffs are awarded $45,000 for the services of Attorneys Winter, Smith and Gilbert and $1,174.95 for costs and $20,000 for the services of the Schwartzberg, Barnett & Cohen firm and $113.80 for costs.

Under the American Rule, absent a specific statutory authorization, attorneys' fees are not recoverable. *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The defendants argue that any award of fees in this case would violate the American Rule and the intent of Congress since the Education for All Handicapped Children Act, 20 U.S.C. § 1401 *et seq.* (1975) [hereinafter "EAHCA"] does not contain a provision authorizing an award of attorneys' fees. Plaintiffs contend that they are entitled to a fee award because the claims raised under the EAHCA are also cognizable under 42 U.S.C. § 1983 and therefore fees may be awarded pursuant to the Attorneys' Fees Act, 42 U.S.C. § 1988 (1976).

▮▮▮▮▮ If the governing statute provides an exclusive judicial remedy, section 1983 is not applicable. *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981). Recently, the Seventh Circuit analyzed the EAHCA and held that it provides an exclusive judicial remedy. *Anderson v. Thompson,* 658 F.2d 1205, 1217 (7th Cir. 1981). Therefore, as "[t]he EAHCA does not itself provide for attorneys' fees and plaintiffs cannot rely on section 1983 as a conduit to attorneys' fees under section 1988," *Anderson v. Thompson,* 658 F.2d 1205 at 1217 (7th Cir. 1981), plaintiffs are not entitled to an award of fees for a cause of action under the EAHCA.

Plaintiffs contend that their claim for a fee award under the Attorneys' Fees Act, 42 U.S.C. § 1988 (1976) is not foreclosed by the *Anderson, supra* decision [1] because they also asserted causes of action under both the Equal Protection Clause of the fourteenth amendment and the Rehabilitation Act, 29 U.S.C. § 794 (1978). Defendants argue that although relief was sought under these provisions, plaintiffs are not entitled to an award of attorneys' fees because the root of plaintiffs' action was found in the EAHCA. Defendants cite *Hines v. Pitt Cty. Bd. of Educ.,* 497 F.Supp. 403 (E.D.N.C. 1980) in support of their contention.

---

1. In *Anderson v. Thompson,* 658 F.2d 1205, 1217 n. 19 and n. 20 (7th Cir. 1981), the court noted that the plaintiffs had not alleged either a constitutional violation or a violation of the Rehabilitation Act in their complaint and, therefore, these issues were not before the appellate court.

If both a statutory and a substantial constitutional claim are settled in plaintiffs' favor, attorneys fees may be awarded under 42 U.S.C. § 1988 (1976). *Maher v. Gagne,* 448 U.S. 122, 132, 100 S.Ct. 2570, 2576, 65 L.Ed.2d 653 (1980). Citing the legislative history of section 1988, the Court stated, "Congress intended fees to be awarded where a pendent constitutional claim is involved, even if the statutory claim on which plaintiff prevailed is one for which fees cannot be awarded under the Act." *Id.* at 132, 100 S.Ct. at 2576. Even if the court declines to decide the constitutional issue, fees may be awarded so long as the plaintiff is the prevailing party and the constitutional claim is substantial. *Id.* at 133, 100 S.Ct. at 2576. A substantial constitutional claim is one which has not been entirely foreclosed under prior court decisions or could otherwise be considered wholly frivolous. *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

The parties do not dispute that plaintiffs prevailed in this action. The constitutional claim raised by plaintiffs remained a part of the litigation until the settlement and could not be considered frivolous. Therefore, the plaintiffs may properly receive an award of attorneys' fees under 42 U.S.C. § 1988 (1976). As an award of fees is proper under this statute, the court need not discuss plaintiffs' claim for fees under the Section 504 Attorneys' Fees Act.

Defendants argue that if plaintiffs are found to be entitled to a fee award, the award requested in the memoranda submitted by plaintiffs' counsel should be reduced. In their arguments for the reduction of the fees requested by both the firm of Schwartzberg, Barnett & Cohen and attorneys Winter, Smith and Gilbert, defendants contend that an award should be limited because: 1) payment will be made from the General Revenue Fund of the State; 2) the case was settled prior to trial; and 3) the settlement was jointly attributable to both parties. Additionally, the defendants contend that time spent in preparation of the fee petitions is not compensable; that the hourly rate should vary with the activity performed, and that excessive amounts of time should be stricken from the petitions. These arguments are each considered below.

The Attorneys' Fees Act authorizes the award of attorneys' fees when state officials are sued and payment will be made by the state government. *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). Different standards of reasonableness do not apply to awards to be paid by state governments as opposed to those paid by private litigants. *Custom v. Quern,* 482 F.Supp. 1000 (N.D.Ill.1980). Merely because the payment of a fee award will be made from the state's General Revenue Fund does not mandate limiting that award.

Settlement of a suit does not preclude an award of attorneys' fees. *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Mezo v. International Union, United Steelworkers of America,* 558 F.2d 1280 (7th Cir. 1977). The factors for determining the reasonableness of a fee are outlined in *Bonner v. Coughlin,* 657 F.2d 931, 934 (7th Cir. 1981) and *Waters v. Wisconsin Steel Works,* 502 F.2d 1309, 1322 (7th Cir. 1974), *cert. denied,* 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976). Defendants' contentions regarding the settlement, billable rates and excessive time have all been recognized by the court's consideration of these factors.

Finally, in *Bond v. Stanton,* 630 F.2d 1231 (1980), the Seventh Circuit made clear its position regarding the award of attorneys' fees for time spent in the preparation of the fee petition. The court held, "[w]e now assert explicitly what *Hairston* implies: prevailing plaintiffs under the [Attorneys' Fees] Act are properly entitled to fee awards for time spent litigating their claim to fees." *Id.* at 1235. Defendants' argument to the contrary is without merit. It is within the court's discretion to determine whether the request for such fees is reasonable.

Defendants make two arguments specifically in opposition to the fee request

of Attorneys Winter, Smith and Gilbert who are employees of either the Legal Assistance Foundation or a division thereof. First defendants argue that *Gagne v. Maher*, 594 F.2d 336 (2d Cir. 1979), *aff'd.*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) authorized reducing fee awards made to legal service organizations to the extent that the organization receives state and federal funding. The Second Circuit did affirm the district court's reduction of the fee, but stated that, "such a reduction is not mandatory and we do not suggest it routinely be done ... the issue is committed to the sound discretion of the district court." *Id.* at 345. Defendants' argument that the Supreme Court opinion implicitly affirmed such a reduction is without merit as the issue was not raised before the Court. Since the Seventh Circuit has repeatedly upheld the award of fees to legal service organizations, *Mary and Crystal v. Ramsden*, 635 F.2d 590 (7th Cir. 1980); *Brown v. Stanton*, 617 F.2d 1224 (7th Cir. 1980); *Townsend v. Edelman*, 518 F.2d 116 (7th Cir. 1975), this court declines to follow the limited precedent from the Second Circuit.

Secondly, the defendants argue that plaintiffs are not entitled to any fee award for the services of Attorneys Winter and Smith who are employed by the Mental Health and Developmental Disabilities Law Project [hereinafter Law Project] a division of the Legal Assistance Foundation. The Law Project has a contract with the Guardianship and Advocacy Commission, a state agency, to provide free legal services, "to eligible persons to enforce rights or duties arising out of any mental health or related laws, local, state or federal." Ill.Rev.Stat. ch. 91½, § 710(2). Under this contract, the Law Project receives state funding. Defendants argue that the Law Project would be receiving a double recovery if they,

agencies of the state government, are required to pay attorneys' fees to the state-funded Law Project. Defendants also contend that under Ill.Rev.Stat. ch. 91½, § 705(i), payment to the Law Project will result in a circular routing of state General Revenue Funds.

As stated above, it is well-settled that plaintiffs may not be deprived an award of attorneys' fees merely because they were represented by a government-funded legal service organization. *Mary and Crystal v. Ramsden*, 635 F.2d 590 (7th Cir. 1980); *Brown v. Stanton*, 617 F.2d 1224 (7th Cir. 1980); *Dennis v. Chang*, 611 F.2d 1302 (9th Cir. 1980). Further, defendants misread Ill. Rev.Stat. ch. 91½, § 705(i).[2] The entire import of section 705(i) is to require that fees paid by *clients* of the Law Project be deposited with the State Treasurer for placement in the General Revenue Fund. Nothing in this section supports the defendants' interpretation that fees from *opposing parties* must also be deposited with the State Treasurer. Plaintiffs are entitled to an award of fees for the services of Attorneys Winter and Smith.

Defendants also oppose an award in the amount requested by the Schwartzberg, Barnett & Cohen law firm. Specifically, defendants contest an award for services in connection with the administrative due process appeal and the use of a multiplier.

▇▇ Defendants argue that the plaintiffs' reliance on *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), as authority for an award of fees for services in connection with an administrative hearing is misplaced. They contend that this decision is limited to Title VII actions because Title VII mandates that administrative remedies be exhausted. Since the EAHCA does not mandate exhaustion of administrative rem-

---

2. "(i) The Commission shall establish rules and regulations for ... evaluating an eligible person's or ward's financial resources for the purpose of determining whether the eligible person or ward has the ability to pay for the legal ... services received. An eligible person or ward found to have sufficient financial resources shall be required to pay the Commission in accordance with standards established by the Commission. No fees may be charged for legal ... services given unless the eligible person or ward is given notice at the start of such services that such fees might be charged. All fees collected shall be deposited with the State Treasurer and placed in the General Revenue Fund."

Ill.Rev.Stat. ch. 91½, § 705(i).

edies, defendants conclude that an award for these services is not proper. However, in *Mezzo v. International Union, United Steelworkers of America*, 558 F.2d 1280 (7th Cir. 1977), the Seventh Circuit noted that under 42 U.S.C. § 1988 (1976), "Attorneys' fees . . . may include compensation for time spent in exhausting administrative remedies and other prelitigation services necessary or *beneficial* to the litigation. . . ." *Id.* at 1283. (Emphasis supplied). Therefore, it is within the discretion of this court to award fees for services in connection with the administrative due process hearing.

The Schwartzberg firm has requested that this court use a multiplier of two times the straight time spent on the litigation, since it was precluded from accepting other fee generating matters during the pendency of this action and because legal and factual issues were both novel and complex.

A multiplier may be used in an appropriate case. *Bonner v. Coughlin*, 657 F.2d 931, 936 (7th Cir. 1981). In determining whether a multiplier is appropriate, factors to be considered include the contingent nature of the fee, the novelty and complexity of legal and factual issues, whether the attorneys were precluded from accepting other employment and whether the attorneys operated under time limitations. *Bonner, supra* at 936; *Kamberos v. GTE Automatic Electric, Inc.*, 603 F.2d 598, 604 (7th Cir. 1979). The decision rests within the discretion of the court.

It is true that the EAHCA was a new act when this litigation was commenced. Both sides characterized the issues involved as unique and complex, but the extra work of the attorneys dictated by these circumstances will be reflected in the number of hours they expended on the case. There is no evidence that the attorneys were obligated to work on this case solely and to the exclusion of other employment, except to the extent that work on any matter in the ordinary course of the law practice results in the inability to handle other matters or the delay in other matters.

The court finds, therefore, no unusual circumstances justifying the application of a multiplier in the case. Counsel for the plaintiffs expended a great number of hours in representing the plaintiffs and are entitled to a reasonable compensation on an hourly basis for their efforts.

The Schwartzberg firm has submitted affidavits indicating that Mr. Cohen billed 33 hours at $95 an hour, Mr. Levin billed 244.-75 hours at $85 an hour, and Mr. Thomas billed 65.25 hours at $50 an hour. The rates charged are reasonable in view of the experience and ability of the attorneys and the rates customarily charged in this area. However, for the reasons stated below, the court finds it appropriate to reduce the number of hours for which compensation will be awarded.

In view of the circumstances of this case, the court will not award fees for hours spent in preparation of plaintiffs' attorneys' fee petitions. In addition, it is the sense of this court that the attorneys for plaintiffs may not have expended their hours as efficiently as possible and that the requests should be reduced. Therefore, the court awards attorneys' fees to Attorneys Winter, Smith and Gilbert in the amount of $45,000 and $1,174.95 for costs. This court awards attorneys' fees to the law firm of Schwartzberg, Barnett & Cohen in the amount of $20,000 and $113.80 for costs. The court will not attempt to further divide the awards among the attorneys but leaves that to the attorneys involved.