Concepcion **CRUZ** on behalf of her son Pedro Vega Cruz; Valentin Chaparro on behalf of his son Alfredo Chaparro, Plaintiffs,

v.

Jenaro Collazo **COLLAZO**, Secretary of the Department of Social Services, et al., Defendants.

Civ. No. 77–830.

United States District Court, D. Puerto Rico.

Oct. 26, 1979.

308

Inés Stoll Roche, P. R. Legal Services, Inc., Hato Rey, P. R., for plaintiffs.

Kittybelle Rivera Umpierre, Asst. Sol. Gen., Dept. of Justice, San Juan, P. R., for defendants.

## OPINION AND ORDER

TOLEDO, Chief Judge.

The complaint in this case was filed on June 1, 1977, the jurisdiction of the Court having been invoked under Title 28, United States Code, Sections 1343(3), 1651, 2201 and 2202. On October 18, 1978, we entered an Order wherein we ruled that the plaintiff in this case was not an adequate representative of the claims and characteristics of juveniles under the custody of the Secretary of Social Services at the Guaynabo Juvenile Institution, and we therefore ordered the case dismissed unless the complaint was amended and new plaintiffs added to the original complaint. An amended complaint was filed on November 1, 1978. In the same it is alleged that plaintiff is a juvenile presently within the custody of the Secretary of the Department of Social Services of the Commonwealth of Puerto Rico and residing at the Guaynabo State Home for Boys. It is averred that plaintiff is not receiving adequate rehabilitative treatment and that, thus, defendants are depriving plaintiff, and the class he seeks to represent, of their rights secured by the Due Process Clause as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. It is further claimed that plaintiffs' rights as guaranteed by the Fourth, Ninth and Thirteenth Amendments have been violated. Plaintiffs also claim causes of action arising from violations to the Education for All Handicapped Children Act, Title 20, United States Code, Section 1401 *et seq.*, Section 504 of the Rehabilitation Act of 1973, Title 29, United States Code, Section 794 and the Juvenile Justice and Delinquency Prevention Act, Title 42, United States Code, Section 5601 *et seq.*

Presently pending before this Court is defendants' motion to dismiss for lack of jurisdiction to entertain this action, and plaintiff's request for certification of a class as represented by plaintiff herein.

## ANALYSIS

Defendants, in contending that this Court lacks jurisdiction to entertain this action, base their argument on an interpretation of the recent Opinion issued by the Supreme Court of the United States in the case of *Chapman v. Houston Welfare Rights Organization* and *Gonzalez v. Young*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). These cases turned on the construction of the jurisdictional provisions contained in Title 28, United States Code, Section 1343(3) and (4), and their interrelationship with Title 42, United States Code, Section 1983 and the Federal statutes cited in the complaint as guaranteeing the equal rights of the citizens.

■ This Court finds that the instant case does not fall within the purview of the *Chapman* rationale. We so find after concluding that the holding of the Supreme Court in *Chapman* and the companion case can only be applied in cases wherein no Federal constitutional claims are advanced and wherein the claims rest on statutes which are not intended to guarantee equal rights. Only in those cases would we deny jurisdiction under Title 28, United States Code, Section 1343(3) and (4).

On May 14, 1979, the Supreme Court of the United States decided the cases of *Chapman v. Houston Welfare Rights Organization* and *Gonzalez v. Young*, supra. As stated by the Court, "The question presented by these cases is whether [the United States District Court's] jurisdiction encompasses a claim that a *state* welfare regulation is invalid because it conflicts with the Social Security Act." *Id.* at p. 603, 99 S.Ct. at p. 1908. (Emphasis added). The Court concluded that it does not.

The Court's decision turned on the construction of the two jurisdiction provisions, Title 28, United States Code, Section 1343(3) and (4)[1], and their interrelationship with Title 42, United States Code, Section

---

1. Title 28, United States Code, Section 1343(4) provides:

   "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

   .  .  .  .  .

   (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

1983, and the Social Security Act. The Court finally addressed itself to the conflict between several decisions as to whether or not the Social Security Act is a statute "providing for equal rights" within the meaning of Section 1343(3). *Hagans v. Lavine,* 415 U.S. 528, 534, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *McCall v. Shapiro,* 416 F.2d 246 (2 CA, 1969); *Almenares v. Wyman,* 453 F.2d 1075 (2 CA, 1971).

Referring to Section 1343(3), the Court stated: "Congress has created federal jurisdiction of any civil action authorized by law to redress the deprivation under color of state law 'of any right, privilege or immunity secured by the Constitution of the United States or by an Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.'" *Id.* 441 U.S. at 612, 99 S.Ct. at 1913. After analyzing the phrase "secured by the Constitution" the Court concluded that Section 1343(3) does not "confer jurisdiction over every conceivable federal claim against a state agent". An "allegation of incompatibility between federal and state statutes and regulations does not, in itself, give rise to a claim 'secured by the Constitution' within the meaning of Section 1343(3)."

As to the construction of Title 42, United States Code, Section 1983, the Supreme Court pondered whether this Section "should be considered an Act of Congress 'providing for the protection of civil rights' within Section 1343(4)". The Court reached the same conclusion under both sub-sections (3) and (4), that Section 1983 "does not provide any rights at all". *Id.* at 618, 99 S.Ct. at 1916.

Finally, the Court examined the Social Security Act as to whether or not this statute secures "equal rights" within Section 1343(3) or "civil rights" within Section 1343(4). *Id.* at 620–621, 99 S.Ct. at 1917. It was decided that "the Social Security Act does not fall within the terms of either Section 1343(3) or (4)".

In summary, all that was decided by the Court in these cases was that the Social Security Act was not a statute providing for "equal rights" or for the "protection of civil rights" and that therefore, a claim that a state regulation is invalid because it conflicts with the Social Security Act does not fall within the jurisdiction of the United States District Courts under the meaning of Title 28, United States Code, Section 1343(3) and (4).

■ However, to give the *Chapman* decision the broad interpretation suggested by defendants in their motion to dismiss would amount to "deprive a plaintiff of a federal forum without justification . . .". Dissenting opinion by Mr. Justice Stewart, *Id.* at 675–676, 99 S.Ct. at 1946. Although it is correct that "the Congress that enacted Section 1343(4) was primarily concerned with providing jurisdiction for actions dealing with the civil rights enumerated in Title 42, United States Code, Section 1985, and most notably the right to vote", *Id.* at 621, 99 S.Ct. at 1917. The Supreme Court in *Chapman,* supra, pointed out that "the words of these statutes *are not limited to the precise claims which motivated their passage.*" *Id.* at 621, 99 S.Ct. at 1917. (Emphasis added).

We thus must consider whether the Education for All Handicapped Children Act, the Rehabilitation Act and the Juvenile Justice and Delinquency Prevention Act are Federal statutes providing for equal rights. For the reasons stated below, we conclude in the affirmative.

## THE EDUCATION FOR ALL HANDICAPPED CHILDREN ACT

(Public Law 94–142) (20 U.S.C. § 1401 *et seq.*).

The captioned statute was approved by Congress in November, 1975. This law provides Federal funds to the states for the provision of an appropriate public education to all handicapped children within the state.[2]

---

2. "The Education Amendments of 1974, incorporated the major principles of the right to education cases. That Act added important

new provisions to the Education of the Handicapped Act which require the States to: establish a goal of providing full educational oppor-

The Congressional intent in enacting Public Law 94–142, can be easily ascertained from the legislative history of the bill. At page 5 of the Senate Labor and Public Welfare Committee's Report (No. 94–168), Congress pointed out that approval of this statute derives from the "increased awareness of the educational needs of handicapped children *and landmark court decisions establishing the right to education for handicapped children* . . .". (Emphasis added).

The Committee went on to state that this legislation "followed a series of landmark court cases establishing in law the right to education for all handicapped children. Since those initial decisions in 1971 and 1972 and with similar decisions in 27 states, *it is clear today that this 'right to education' is no longer in question." Id.* at page 6. (Emphasis added).

Said Committee further stated:

"This Nation has long embraced a philosophy that the right to a free appropriate public education is basic to equal opportunity and is vital to secure the future and the prosperity of our people. It is contradictory to that philosophy when that right is not assured equally to all groups of people within the Nation. Certainly, the failure to provide a right to education to handicapped children cannot be allowed to continue.

.    .    .    .    .

. . . It is this Committee's belief that the Congress must take a more active role under *its responsibility for equal protection of the laws* to guarantee that handicapped children are provided equal educational opportunity." *Id.* at page 9. (Emphasis added).

We are not called here to give a new and more expansive definition of the term "civil rights". Said term has been given different and varied interpretations: "Civil rights should be regarded as an enforceable claim, structured in legislation requiring involvement by governmental units." *Iron Workers Local No. 67 v. Hart,* Iowa, 191 N.W.2d 758, 771. "No right that is unenforceable in a court of law or equity, in any court of the United States, can be classified as a civil right". *Progress Development Corp. v. Mitchell,* 182 F.Supp. 681, 713 (D.C., Ill.). "[R]ight to public education is a 'civil right' guaranteed by Montana law." *Moran v. School District No. 7,* 350 F.Supp. 1180, 1182 (D.C., Mont.).

█ The Legislative History of the Education for All the Handicapped Children Act shows that Congress itself considered this statute as a Federal civil rights act and the cases cited above show that in so doing, Congress did no more than what had already been recognized by several courts. Thus, it is correct that we conclude that said act falls within the meaning of Title 28, United States Code, Section 1343(3) when it confers jurisdiction to the Federal district courts to entertain "civil rights" cases.

█ Moreover, Congress itself granted jurisdiction to the United States District Courts in controversies arising under Public Law 94–142. Section 5(a) of said statute provides as follows:

"The district court of the United States shall have jurisdiction of actions brought under this *subsection without regard to the amount in controversy."* 20 U.S.C. § 1415(e)(4).

tunities to all handicapped children; provide procedures for insuring that handicapped children and their parents or guardians are guaranteed procedural safeguards in decisions regarding identification, evaluation, and educational placement of handicapped children; establish procedures to insure that, to the maximum extent appropriate, handicapped children, including children in public or private institutions or other care facilities are educated with children who are not handicapped; and that special classes, separate schooling, or other removal of handicapped children from the regular

education environment occurs only when the nature or severity of the handicapped is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily; and, establish procedures to insure the testing and evaluation materials and procedures utilized for the purposes of classification and placement of handicapped children will·be selected and administered so as not to be racially or culturally discriminatory." Senate Report (Labor and Public Welfare Committee) No. 94–168, June 2, 1975; at page 8.

In *Hague v. C.I.O.*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), the Supreme Court of the United States had said:

"[S]ince 1875, the jurisdictional acts have contained two parallel provisions, one conferring jurisdiction on the federal courts, district or circuit, to entertain suits "arising under the Constitution or laws of the United States" in which the amount in controversy exceeds a specified value; the other, now Section [1343(3)] of the Judicial Code, conferring jurisdiction on those courts of suits authorized by the Civil Rights Act of 1871, regardless of the amount in controversy." Supra, at page 529, 59 S.Ct. at page 970.

We are convinced that Section 5(a)(4) of the statute, cited above, is precisely a statutory grant of jurisdiction under Section 1343(3), so that the Federal District Courts may entertain civil rights actions arising under the Education for All Handicapped Children Act without regard to the amount in controversy.

## SECTION 504 OF THE REHABILITATION ACT OF 1973

### (29 U.S.C. 794)

Section 504 of the Rehabilitation Act, supra, provides as follows:

"No otherwise qualified handicapped individual in the United States, as defined in Section 7(6) shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

In a Preamble to the Section 504 Regulation issued in June, 1977, the Honorable Joseph A. Califano, Jr., former Secretary of the United States Department of Health, Education and Welfare, stated as follows:

"Section 504 thus represents the first federal civil rights law protecting the rights of handicapped persons and reflects a national commitment to end dis-

crimination on the basis of handicap. The language of section 504 is almost identical to the comparable non-discrimination provisions of title VI of the Civil Rights Act of 1964 and title IX of the Education Amendments of 1972 (applying to racial discrimination and to discrimination in education on the basis of sex). It establishes a mandate to end discrimination and to bring handicapped persons into the mainstream of American life. The Secretary intends vigorously to implement and enforce that mandate." 45 C.F.R., Part 84. (Emphasis added).

Subpart D of the Regulation, supra, is designed to eliminate discrimination on the basis of handicap in education programs. (Section 84.31 et seq.). As well as Public Law 94–142, the Regulation establishes that a free appropriate public education shall be provided to each qualified handicapped person who is within the Federal funds recipient's jurisdiction, regardless of the nature or severity of the person's handicap. (Section 84.33). Plaintiffs herein allege that these provisions are not being complied with by defendants. See Paragraphs 57 and 71 of the Amended Complaint, supra.

Section 504 has already been tested by the courts. It has been analyzed as to whether or not it authorizes a private cause of action and whether administrative remedies need to be exhausted before resorting to the courts.

Most of the courts have held that Section 504 allows a private right of action to enforce the Act. In *Lloyd v. Illinois Regional Transportation Authority*, 548 F.2d 1277 (7 CA, 1977), analyzed the implications of private rights of action and reached the conclusion that such rights exist with respect to individuals aggrieved by violations of Section 504.[3] See also: *Davis v. Southeastern Community College*, 574 F.2d 1158 (4 CA, 1978); *Kampmeier v. Nyquist*, 553 F.2d 296 (2 CA, 1977); *Leary v. Crapsey*, 566

---

**3.** In this case the Court cited a Senate Labor and Public Welfare Committee Report, which noted that Section 504 ". . . was patterned after, and is almost identical to the anti-discrimination language of Section 601 of the Civil

Rights Act of 1964 . . ." (Senate Report No. 93–1297, 93rd Cong., 2d Session 39–40 (1974)) U.S.Code Cong. & Admin.News 1974, pp. 6373, 6390. *Id.* at 40.

F.2d 863 (2 CA, 1977); *United Handicapped Federation v. Andre*, 558 F.2d 413 (8 CA, 1976). To end judicial debate over the issue, in 1978 Congress enacted Section 507 of the Rehabilitation Act authorizing a private right of action.

There is also a clear line of cases holding that there is no need to exhaust administrative remedies before filing a complaint under Section 504 of the Rehabilitation Act. *Lloyd*, supra; *Bartels v. Biernat*, 427 F.Supp. 226 (E.D.Wis., 1977).

In *Campbell v. Kruse*, 434 U.S. 808, 98 S.Ct. 38, 54 L.Ed.2d 65 (1977), the Supreme Court directed a District Court to decide a private plaintiff's claim under Section 504, *Doe v. Westby*, 433 U.S. 901, 97 S.Ct. 2962, 53 L.Ed.2d 805 (1977). Thus, it was to be inferred that in so doing the Supreme Court recognized judicial authority to entertain a private action brought under Section 504 without subjecting plaintiff's claim to a prior administrative review.

■ For all the reasons stated above, we are convinced that there exists a private right of action under Section 504 of the Rehabilitation Act, and that the doctrine of primary jurisdiction and administrative review before filing a civil suit are of no application to cases arising under said provision.

### THE JUVENILE JUSTICE AND DELINQUENCY PREVENTION ACT

The Juvenile Justice and Delinquency Prevention Act of 1974, Title 42, United States Code, Section 5601 et seq., (P.L. 94–415), was enacted to aid the states to develop effective delinquency prevention programs, to divert more young people from the juvenile court process, and to provide urgently needed alternative to detention and correctional facilities.

For the above stated purposes, Title 42, United States Code, Section 5602(b), provides as follows:

"(b) It is therefore the further declared policy of Congress to provide the necessary resources, leadership, and coordination (1) to develop and implement effective methods of preventing and reducing juvenile delinquency; (2) to develop and conduct effective programs to prevent delinquency, to divert juveniles from the traditional juvenile justice system and to provide critically needed alternatives to institutionalization; (3) to improve the quality of juvenile justice in the United States; and (4) to increase the capacity of State and local governments and public and private agencies to conduct effective juvenile justice and delinquency prevention and rehabilitation programs and to provide research, evaluation, and training services in the field of juvenile delinquency prevention.

The Commonwealth of Puerto Rico has been participating in the implementation of this statute since June 30, 1976, when Federal funds were awarded to it.

The Act recognizes that juvenile delinquency is a concern of the Nation and in order to provide individualized justice and effective help to the juveniles, programs should be established in each state designed to keep students within the school system, to divert juveniles from the traditional juvenile justice system, and to provide critically needed alternatives to institutionalization. Section 5602(b), supra.

While acknowledging that juvenile delinquency is a real problem, the Congress also conceded that the means whereby juvenile delinquents have been dealt with in the past are inadequate. Thus, the Act embraces the principle of the least restrictive alternative in providing that necessary resources shall be provided for the states to develop and implement programs to divert juveniles from the traditional juvenile justice system, and to provide alternatives to institutionalization.

■ In Paragraph 72 of the Amended Complaint, plaintiffs claim a cause of action under the Juvenile Justice and Delinquency Prevention Act "By not considering less restrictive alternatives to the institutionalization of plaintiffs . . .". They would like us to find that said claim is encompassed within the terms of Section 1343(4) as an allegation of deprivation of a civil right of (liberty).

We are not ready to hold that the Act here considered defines a liberty right such as to be actionable under Section 1343(4). We do recognize however, that the statute clearly evinces an intention to implement the "least restrictive alternatives" in regard to the rehabilitation of juvenile delinquents. Such being the case, the Court finds no jurisdiction to entertain said portion of the case under Title 28, United States Code, Section 1343. This is so because we find no evidence that a private cause of action was created by Congress so as to give standing to plaintiff herein to sue the State or the state agencies for not complying with the national Federal policy stated in Section 5602 cited above. *Cf. Maria Luisa Castro v. Arrarás* (1 CA, October 10, 1979).

For all these reasons, defendants' motion to dismiss must be DENIED in part and GRANTED in part. Plaintiff's claims under Title 42, United States Code, Section 5601 et seq., must be dismissed.

## CERTIFICATION OF CLASS ACTION

Also pending in this case is plaintiff's request for the certification of a class action pursuant to the provisions of Rule 23(b)(2) of the Federal Rules of Civil Procedure.

A class action is maintainable only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Rule 23(a) of the Federal Rules of Civil Procedure.

In addition to the four prerequisites mentioned above, an action may be maintained as a class action when (1) the existence of separated individual actions would create the risk of (a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class or (b) adjudications as to individual members of the class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impede or impair their ability to protect their interests; or (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class thus making appropriate a final injunctive relief or the corresponding declaratory judgment with respect to the class as a whole; or (3) when the Court finds that the question of law or fact common to the members of the class predominate over any question affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Rule 23(b), supra.

With the above guidelines in mind, let us examine the facts of this case. Plaintiff herein is seeking the certification of a class action pursuant to Rule 23(b)(2), supra, comprising all juveniles who are committed to the Guaynabo State Home for Boys and all juveniles who are committed thereto thereafter.

This is not the first time that this Court rules on a petition for the certification of a class action in this case. As per our Opinion and Order dated October, 1978, plaintiff's request to certify a class action was then denied on the basis that the named plaintiff was not a class member at the time of the filing of the complaint. Plaintiffs were granted the opportunity for the amendment of the complaint and Alfredo Chaparro was then brought as the named plaintiff. The record reveals that after the filing of the amended complaint and the plaintiff's request for certification, this named plaintiff reached the age of eighteen and was subsequently released from the institution. Thus, this Court considers of utmost importance the question of whether or not a class could be certified in this action considering that its named plaintiff is not presently a member of the class sought to be represented.

It is quite settled doctrine that the satisfaction of the prerequisites of Rule 23(a) does not end the court's inquiry relat-

ing to the class certification. See: e. g. *Rutherford v. United States,* 429 F.Supp. 506 (1977); *Merced v. Marshall,* (D.C.P.R., Civil No. 78–745, November 16, 1978). Under an analysis which has become known as one of "standard of necessity", plaintiffs must demonstrate that it is necessary to certify the class in order to assure the effectiveness of any eventual remedial decree. *Rutherford,* supra. After analyzing the facts of this case and the applicable jurisprudence we are convinced that the class should be verified in this case under the strict standard of "necessity".

In *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), the Court formulated a two-pronged test for adjudication of class actions where the individual plaintiff has been mooted out: (1) that there existed a case or controversy at the time the complaint was filed, and (2) that the case still presents actual controversies for the class when the Supreme Court reviews it. See: *Frost v. Weinberger,* 515 F.2d 57, 62–63 (2 CA, 1975). In *Sosna,* the Court allowed the plaintiff to pursue a challenge to a state's one year residency requirement for divorce, even though the named plaintiff had resided in the state for more than a year by the time the lower court decided the issue. In that case the Court noted that had plaintiff sued only on her own behalf, the fact that at the time the Court was reviewing the case plaintiff had been a resident in the state for more than a year would have certainly mooted the case thus requiring dismissal. However, it being that plaintiff sought to litigate the constitutionality of the durational requirement in a representative capacity, dismissal was precluded since "the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant". *Id.* 419 U.S. at page 399, 95 S.Ct. at 557.

The Court recognized in *Sosna* that:

"There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court reasonably be expected to rule on a certification motion.

In such instances, whether the certification can be said to 'relate back' to filing of the complaint may depend upon the circumstances of the particular case and specially the reality of the claim that otherwise the issue would evade review." (*Id.* at n. 11, 95 S.Ct. at 559 n. 11).

We find that the present case falls within the category of cases referred to in the above citation. In the instant case, considering that the named plaintiff was already discharged from the Guaynabo State Home for Boys, prior to the certification of the class, the denial of class certification would consequently require the dismissal of the whole action.

Situations akin to the case at bar have been resolved consistently in favor of class certification. In *La Reau v. Manson,* 383 F.Supp. 214 (1974), the pretrial detainees brought a class action alleging that the physical conditions of the correctional center to which they were committed were so unhealthy and unsanitary that they constituted a violation of their Federal civil rights. The class was certified even though by the time the Court considered the petition for class certification the named plaintiffs were no longer pretrial detainees. The Federal District Court of Connecticut concluded that should it fail to certify the class, there was a strong possibility that no class or pretrial detainees at the correctional center would ever be certified due to the high turnover existing at that institution. In *Jones v. Diamond,* 519 F.2d 1090 (1975), a class was certified although the named plaintiff had been released from the jail, the conditions of which he was challenging. The Fifth Circuit Court of Appeal noted that other individuals similarly situated could be detained under the allegedly unconstitutional conditions. The same rationale was followed in *Mudd v. Busse,* 68 F.R.D. 522 (1975); *Rivera v. Freeman,* 469 F.2d 1159 (1972); *Vaughan v. Bower,* 313 F.Supp. 37 (1970). In *Osorio v. Rios,* 429 F.Supp. 570 (D.C.P.R., 1976), we certified a class action declaring the named plaintiffs adequate representatives of the class of juveniles confined in adult penal institutions

notwithstanding the fact that plaintiffs had been transferred from the adult institution more than a year before the order certifying the class was issued.

■ The length of stay of a given juvenile in an institution is an uncertain matter and is capable of termination by release or transfer at the will of defendants. Also, according to the laws of Puerto Rico, the attainment of the age of 18 definitely excludes such juveniles from the jurisdiction and custody of the Juvenile Institutions. It is by no means certain that any given individual named as plaintiff in a case would be committed to a given institution long enough for the Court to certify the class. In this case the existence of a class is certain and it can be safely assumed that there are other juveniles with a live interest in this case. *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Williams v. Wohlgemuth,* 540 F.2d 163, 167 (1976); and *Inmates of San Diego County Jail v. Duffy,* 528 F.2d 954, 957 (1975), where the Court held that the ultimate certification of a class action could be said to relate back to the filing of the petition for certification.[4]

Therefore, under the provisions of Rule 23 of the Federal Rules of Civil Procedure and due to the common questions of law and fact that allegedly affect the class represented by plaintiffs in this action, the numerous members of the class and the state of constant flux of juveniles existing in the Guaynabo State Home for Boys, and having ascertained that the representative plaintiff fairly and adequately protects the interests of the class and because the prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standard of conduct for defendants, the class comprising "all juveniles who are now or may in the future be placed in the Guay-

nabo State Home for Boys" is hereby CERTIFIED.

IT IS SO ORDERED.

---

4. Our present holding should in no way be deemed as a withdrawal of our position in October of 1978, when we denied the then named plaintiff's request for certification of class action. The reasons then stated in our Opinion and Order are still valid, but we find that the situation of the present named plaintiff is substantially different and thus distinguishable from that of Pedro Vega Cruz.