Antonio **GRENIER, a minor, By and Through Nancy GRENIER, His Next Friend, on Behalf of Antonio GRENIER, Plaintiff,**

v.

**KENNEBEC COUNTY, MAINE, Frank Hackett, in His Official Capacity as Sheriff of Kennebec County, Maine, and Individually, and Nancy G. Rines, George M. Jabar, II, and Wesley G. Kieltyka, in Their Official Capacities as County Commissioners of Kennebec County, Maine, Defendants.**

No. 89–0180–P.

United States District Court, D. Maine.

Sept. 28, 1990.

Nancy D. Metz, Fairfield, Me., W. Thomas Hyde, Merrill Hyde, Skowhegan, Me., for plaintiff.

Steven J. Mogul, Gross, Minsky, Mogul & Singal, P.A., Bangor, Me., for defendant Frank Hackett.

Theodore H. Kiechner, Norman Hanson & DeTroy, Portland, Me., for defendants Kennebec County, Frank Hackett, Nancy Rines, George Jabar, II, and Wesley Kieltyka.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, Chief Judge.

This case comes before the Court on separate Motions to Dismiss by Defendants Kennebec County, Nancy Rines, George Jabar, and Wesley Kieltyka (hereinafter Kennebec County *et al.*) and by Defendant Frank Hackett pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court addresses the Motions together as they raise closely related, at times identical, issues of law. For the reasons presented below, the Motions of Defendants are granted in part and denied in part.

## I. BACKGROUND AND MOTION TO DISMISS

Antonio Grenier (hereinafter Grenier), appearing by and through his mother and next friend Nancy Grenier, is the Plaintiff in this civil rights action. According to his Complaint and subsequent submissions to this Court, Grenier was arrested by the Waterville, Maine police on July 9, 1988. He was fifteen years old at the time. Grenier's alleged violation—unauthorized use of a motor vehicle—would have been a misdemeanor had it been committed by an adult. This suit arises from Grenier's claim that the treatment he received while incarcerated from July 9, 1988 to July 13, 1988 in the Kennebec County Jail (hereinafter the Jail) deprived him of his rights and caused him damages consisting of serious emotional, psychological, and attitudinal problems now requiring treatment.

Grenier alleges that his treatment at the Jail was no better, and at times worse, than that given adult prisoners. Specifically, Grenier alleges he was admitted to the Jail through the same area as the adult prisoners and "processed" in the same room as adult prisoners. He was allegedly strip searched during the "processing" and heard comments from the Jail staff unmistakably implying the threat of sexual attack by adult prisoners.[1] Grenier was thereafter allegedly confined to a room adjoining the processing room where he could hear and see, and be heard and seen by, adult prisoners. Throughout this confinement, Grenier was left unsupervised for extended periods of time by the Jail staff.

Grenier further alleges that he was held incommunicado during his entire period of incarceration at the Jail. He alleges that he was not permitted to call either his mother or an attorney. Nancy Grenier was allegedly denied the right to visit her son for the duration of his confinement at the Jail, even when she appeared in person to request an opportunity to do so. Grenier allegedly received no counselling, or medical or psychological screening from qualified staff. Finally, Grenier alleges that he

---

**1.** Grenier alleges that he "heard comments from the jail staff about 'giving him soap on a rope and sending him upstairs to the big boys....'" Complaint at ¶ 41 (Docket No. 1).

was deprived of outdoor exercise for his term at the Jail.

Grenier's Complaint claims that the above described treatment at the Jail constituted a denial of due process, cruel and unusual punishment, and unreasonable seizure of his person in violation of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution; Article I, Sections 5, 6–A, and 9 of the Maine Constitution; the federal Juvenile Justice and Delinquency Prevention Act of 1974 (hereinafter the Juvenile Justice Act), 42 U.S.C. § 5601 *et seq.;* and the Maine Juvenile Code, 15 M.R.S.A. § 3203–A(7)(A)(1), (2) & (3). Grenier seeks to enforce the rights guaranteed by these constitutional and statutory provisions using the private right of action provided by Title 42 U.S.C. section 1983.[2] With regard to the claims under Maine's statutory and constitutional law, Grenier also relies on the state counterparts to section 1983. *See* 5 M.R.S.A. §§ 4681 and 4682.

The Defendants named in the Complaint of July 12, 1989 were the State of Maine; Donald Allen, the Commissioner of Maine's Department of Corrections; Kennebec County, Maine; Nancy Rines, George Jabar, and Wesley Kieltyka, the County Commissioners of Kennebec County; and Frank Hackett, the Sheriff of Kennebec County. Defendants Donald Allen and the State of Maine moved on October 3, 1989 to dismiss the claims against them in the Complaint. This Court, acting on the Recommended Decision on Motions to Dismiss of Defendants State of Maine and Donald L. Allen (hereinafter Recommended Decision) by the Honorable David Cohen, United States Magistrate, granted both Motions to Dismiss on March 23, 1990,[3] 733 F.Supp. 455, and clarified that Order on September 12, 1990 to effectively dismiss all claims against Defendants State of Maine and Allen.[4]

---

**2.** Section 1983 reads in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
>
> 42 U.S.C. § 1983.

**3.** Because it is relevant to the present Motions to Dismiss, the Court pauses to review the reasoning supporting Magistrate Cohen's recommended decision dismissing Defendants Allen and the State of Maine. Dismissal of the claims against the State of Maine rested exclusively on the Eleventh Amendment's guarantee of sovereign immunity to the states. *See* Recommended Decision at 2–7 (Docket No. 9). The Magistrate found, and this Court agreed, that Maine had not waived its immunity by adopting the Maine Civil Rights Act, 5 M.R.S.A. §§ 4681–83. *Id.* at 3–5 (Docket No. 9). In addition, Congress did not expressly override Maine's sovereign immunity by adopting the Juvenile Justice Act, 42 U.S.C. § 5601 *et seq.,* or by the enforcement of the Juvenile Justice Act through private action pursuant to 42 U.S.C. section 1983. *Id.* at 5–7. Finally, the Magistrate properly rejected Grenier's assertion that injunctive relief against a state is not barred by the Eleventh Amendment. *Id.* at 7.

The recommendation for the dismissal of Defendant Allen had two bases. First, the Eleventh Amendment prohibits suits against state officials in their official capacities for injunctive relief based on state law or damages based on any law. Second, the claims for injunctive relief were moot. The Court accepted both of these analyses by the Magistrate. The latter rationale applies equally well to the present Motions and will be discussed *infra* at Section II.

The Court did not rest its approval of the Recommended Decision on dicta therein, relied on by the remaining Defendants, which suggests that the Juvenile Justice Act "fails to provide a private cause of action." *Id.* at 6. In addition, the Magistrate expressed no firm opinion as to whether the Juvenile Justice Act creates rights which are enforceable through section 1983 in circumstances where there is no Eleventh Amendment immunity. *See id.* at 7. Therefore, the issue of whether there are private rights available from the Juvenile Justice Act is not yet decided by this Court and will be addressed herein.

**4.** The original Order Affirming the Recommended Decision of the Magistrate (hereinafter the Order) dismissed all claims against Defendant State of Maine and all state claims, federal claims seeking monetary relief, and federal claims seeking injunctive relief against Defendant Allen. *See* Order (Docket No. 10). After the time provided to amend the Complaint had elapsed, the Court amended the Order to dismiss all claims seeking federal declaratory relief. *See* Motion to Clarify Order and Amended Order (Docket No. 11).

The remaining Defendants now move for dismissal of the claims against them on the following grounds. First, all the Defendants claim that Grenier does not have standing to seek injunctive or declaratory relief and therefore such equitable relief may not be granted on any claim. Second, Defendant Hackett argues that no private right of action is available under the Maine Constitution because the statutes enabling such actions, *see* 5 M.R.S.A. §§ 4681 and 4682, were not yet effective when the cause of action arose or when the Complaint was filed. Third, Defendant Hackett argues that there is no private right of action available under the Maine Juvenile Code. Fourth, all the Defendants argue that there is no private right of action implied in the federal Juvenile Justice Act. Fifth, Defendants Kennebec County *et al.* argue that, in the event constitutional or statutory violations occurred in the Jail and may be heard in this Court, the County Commissioners were under no legal duty to avoid or remedy those violations and therefore cannot be subject to liability. Finally, Defendants Kennebec County *et al.* argue that, in the event liability is found, no punitive damages may issue against those acting in their official capacities.[5]

Motions to dismiss pursuant to Rule 12(b)(6) permit the Court to determine before trial whether a plaintiff's pleadings meet the liberal notice pleading requirements of the Federal Rules of Civil Procedure. *Mladen v. Gunty*, 655 F.Supp. 455, 457 (D.Me.1987). In making that determination, the Court must accept as true all of the plaintiff's allegations and interpret all facts contained in the complaint in the manner which is most favorable to the plaintiff. *See Miree v. De Kalb County*, 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). The only circumstances in which a motion to dismiss may be granted are those where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99,

101–102, 2 L.Ed.2d 80 (1957). The issue raised by these Motions, therefore, is whether the arguments offered by the Defendants invalidate the legal bases for the claims set forth in the Complaint.

## II. STANDING FOR INJUNCTIVE RELIEF

The Court previously adopted Magistrate Cohen's reasoning in the Recommended Decision with respect to the issue of Grenier's standing for claims seeking injunctive relief. *See* Recommended Decision at 9–10 (Docket No. 9). The Court now elaborates on that reasoning.

 The case or controversy requirement in Article III of the United States Constitution limits the jurisdiction of the federal courts to those plaintiffs who can "demonstrate a 'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 S.Ct. 1660, 1664, 75 L.Ed.2d 675 (1983) (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)). *See also O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974) ("Nor is the principle different where statutory issues are raised"). The plaintiff must show concrete and direct injury, or the danger that such injury is posed by a real and immediate threat, before a federal court may assume jurisdiction. *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973).

 Grenier claims that he was injured by the conduct of the Defendants leading up to and during his term of incarceration. The Complaint also expresses general fears that "defendants will continue to confine juveniles, including possibly [Grenier], under illegal conditions in the future unless plaintiff is granted" the injunctive relief demanded. Complaint at ¶ 38 (Docket No.

---

**5.** The Court notes that Defendant Hackett has offered no argument supporting the dismissal of the section 1983 claims for monetary damages which are based on violations of the federal

Constitution. In the absence of a future dispositive pre-trial motion, those issues remain for trial.

1). No basis for these fears has been alleged and no facts demonstrating the likelihood of Grenier's reincarceration at the Jail have been alleged. In short, Grenier seeks injunctive relief from future conduct while alleging injury only from past conduct.

While "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury," *Littleton*, 414 U.S. at 496, 94 S.Ct. at 676, the Supreme Court has made clear that plaintiffs like Grenier who rely exclusively on past wrongs to suggest a threat of future harm cannot properly be granted standing. *See Rizzo v. Goode*, 423 U.S. 362, 372, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976). In *Littleton*, the plaintiffs claimed that they had suffered discriminatory treatment in the administration of criminal law at the hands of a local magistrate, judge, state's attorney, and police commissioner. 414 U.S. at 490–93, 94 S.Ct. at 673–75. Plaintiffs sought to enjoin any future discriminatory action by these officials. The Supreme Court held that plaintiffs were without standing.

The Supreme Court found the prospect that plaintiffs would again be arrested, prosecuted and tried by the defendants, and again subjected to discriminatory practices, to be too speculative and conjectural to create a real and immediate threat of injury. *Id.* at 497, 94 S.Ct. at 676. *See also Lyons*, 461 U.S. at 109–10, 103 S.Ct. at 1669–70. The very same can be said in the present case. This Court finds that the danger of Grenier being arrested during his remaining time as a juvenile, confined a second time to the Jail, and exposed to the same mistreatment is entirely too remote to support standing for injunctive relief. The Motions to Dismiss will accordingly be granted to the extent the claims seek injunctive relief.

### III. PRIVATE RIGHTS OF ACTION

#### A.

■ The Maine Civil Rights Act took effect on September 30, 1989. *See* 5 M.R.S.A. §§ 4681 and 4682. The new statute permits private civil actions by any person whose rights under the constitutions and laws of the United States or Maine have been intentionally interfered with "by threat, intimidation, or coercion or attempts to intentionally interfere by threat, intimidation or coercion...." 5 M.R.S.A. § 4681 (incorporated in 5 M.R.S.A. § 4682). Persons injured by the deprivation of their rights may seek legal or equitable remedies. *Id.*

The alleged actions of the Defendants which gave rise to this suit occurred in July, 1988 and the Complaint was filed on July 12, 1989. In the absence of manifest legislative intent to give retroactive effect to the Maine Civil Rights Act, no claim may be based upon a statute which was not in effect at the time of the alleged violations. No state private cause of action is available to Grenier for redress of the alleged violation of his rights under the Maine constitution.

Section 1983 does not make available to Grenier a federal private right of action to seek relief from violations either of Maine's constitution or any of Maine's statutes. Section 1983 claims are valid only against officials who, acting under state law, violate either the federal Constitution or federal statutes. *See Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979); *Malachowski v. City of Keene*, 787 F.2d 704, 708 (1st Cir.), *cert. denied*, 479 U.S. 828, 107 S.Ct. 107, 93 L.Ed.2d 56 (1986); *Roy v. City of Augusta*, 712 F.2d 1517, 1522–23 (1st Cir.1983). *See generally Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (defining the "and laws" phrase in section 1983 to permit claims based on violations of federal statutes by state actors). As a result, no claim for damages under Maine's constitution is available in this case. A valid claim for alleged violations of state law may be available in this case only if a private right of action can be implied in the statutory provisions on which Grenier has relied.[6]

---

**6.** Without the Maine Civil Rights Act as a basis

for a private civil action against Defendants,

## B.

The Maine Juvenile Code (hereinafter the MJC) sets forth the substantive and procedural requirements for adjudicating, confining, and rehabilitating juveniles in the criminal justice system. *See* 15 M.R.S.A. § 3001 *et seq.* The Complaint alleges that the Defendants violated MJC sections 3203–A(7)(A)(1), (2), and (3), which place restrictions on the type of adult facilities in which juveniles may be placed.[7] The parties agree that there is no express provision in the MJC creating a private right of action for juveniles whose rights under the statute have been violated. Defendant Hackett asserts that no private right of action is available in the absence of such express language.

■■■ The Maine Law Court applies a fairly strict test before it will find that the legislature intended to imply a private right of action in a statute. The Law Court holds that no private right of action will be found unless the legislature has expressly created such a right, or clearly expressed in the legislative history its intent to create such a right. *Larrabee v. Penobscot Frozen Foods, Inc.*, 486 A.2d 97, 101 (Me.1984). The legislative history for the MJC and for amendments adopted in 1985 is silent as to implied private rights of action. *See* L.D. 1581 (108th Legis.1977); L.D. 1894 (108th Legis.1977); L.D. 1069 (112th Legis.1985). Applying the Law Court's strict test, there is no private right of action available under the MJC. Accordingly, all claims which

rely upon a private cause of action under the MJC will be dismissed.

## C.

■■■ The Juvenile Justice Act, 42 U.S.C. § 5601 *et seq.* was intended by Congress to improve state programs which address the problems of juvenile delinquency. The stated purposes of the Act are to prevent delinquency, to divert juveniles from the traditional justice system and to provide alternatives to institutionalization, to improve juvenile justice, and to increase the capacity for juvenile delinquency prevention and rehabilitation programs. 42 U.S.C. § 5602(b). *See also Cruz v. Collazo*, 84 F.R.D. 307, 313 (D.P.R.1979). Maine participates in the Juvenile Justice Act program and, as a result, Maine and its municipal bodies are subject to the Act's conditions on funding.

The Complaint alleges that Defendants violated those conditions as a consequence of confining Grenier in the Jail. Section 5633(a) of the statute requires that each state receiving funds under the Juvenile Justice Act create a three-year plan consistent with the purposes of the Act and a long list of mandates. Two of those express mandates are relevant to this case.

First, section 5633(a)(12) requires, in pertinent part, that

(A) ... juveniles who are charged with or who have committed offenses that would not be criminal if committed by an

---

Grenier must rely either on an alternative statutory source of a private right of action or an implied right under the state constitution to seek damage remedies. *See, e.g., Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (implying a private right of action in the Fourth Amendment to the United States Constitution). Neither Plaintiff nor Defendants have addressed the issue of the availability of implied rights of action under the state constitution. In the absence of authority directing this Court to permit such private actions to enforce state constitutional rights, and in the face of a recently enacted statute providing such a private cause of action, *see* 5 M.R.S.A. § 4682, this Court assumes that no private rights of action are implied in the state constitutional provisions advanced by Grenier.

**7.** The sections read in full:

7. *Restriction on place of detention.* The following restrictions are placed on the facilities in which a juvenile may be detained.

A. A juvenile may be detained in a jail or other security facility intended for the use or primarily used for the detention of adults only when the serving facility:

(1) Contains a separate section for juveniles which complies with mandatory separation standards established by the Department of Corrections pursuant to Title 34–A, section 1208;

(2) Provides for no regular contact between the juveniles with [sic] the adult detainees or inmates; and

(3) Has an adequate staff to monitor and supervise the juvenile's activities at all times.

15 M.R.S.A. § 3203–A(7)(A).

adult or offenses which do not constitute violations of valid court orders ... shall not be placed in secure detention facilities or secure correctional facilities; and ...

(B) ... that such juveniles, if placed in facilities, are placed in facilities which (i) are the least restrictive alternatives appropriate to the needs of the child and the community; (ii) are in reasonable proximity to the family and the home communities of such juveniles; and (iii) provide the services described in section 103(1) [42 U.S.C. § 5603(1)].

Section 5603(1) describes a lengthy list of educational, psychological, medical, vocational, and rehabilitative programs to be provided in "a small, open group home or other suitable place located near the juvenile's home or family." 42 U.S.C. § 5603(1).

There can be little doubt that Grenier's incarceration in the Jail, accepting the truth of the allegations in the Complaint, was wholly inconsistent with the requirements of section 5633(a)(12). Grenier was placed in a secure facility. He was treated, at best, like any adult offender would have been treated. No services were provided to Grenier during his time in the Jail and no effort to provide the least restrictive alternative was apparently made by the Defendants. And although the Complaint does not make this clear, the Court infers from the facts alleged that the Jail cannot be reasonably described as a "small, open group home."

> Second, section 5633(a)(13) requires that juveniles alleged to be or found to be delinquent and youths within the purview of paragraph (12) shall not be detained or confined in any institution in which they have regular contact with adult persons incarcerated because they have been convicted of a crime or are awaiting trial on criminal charges.

The circumstances alleged to have surrounded Grenier's confinement are clearly violative of these requirements as well. Grenier was allegedly processed and strip searched in a room with adult prisoners. And, after being processed, he was alleg-edly placed in a room adjoining the processing room in a manner permitting visual and verbal contact with adult prisoners. None of this alleged contact with adult prisoners would have been permitted had the requirements of the Juvenile Justice Act been observed.

After establishing that the Defendants' alleged treatment of Grenier violates the Juvenile Justice Act, the question remains whether the Act creates a claim upon which this Court may grant a damages remedy for those violations. Four courts have now addressed the issue of whether the Juvenile Justice Act creates enforceable rights which can be vindicated through private causes of action. Two courts found such rights of action. *See Hendrickson v. Griggs,* 672 F.Supp. 1126 (N.D.Iowa 1987), *appeal dismissed,* 856 F.2d 1041 (8th Cir. 1988); *Kentucky Ass'n for Retarded Citizens v. Conn,* 510 F.Supp. 1233 (W.D.Ky. 1980) (recognizing the right *sub silentio*), *cert. denied,* 459 U.S. 1041, 103 S.Ct. 457, 74 L.Ed.2d 609 (1981). Two courts found no such rights of action. *See Doe v. McFaul,* 599 F.Supp. 1421 (E.D.Ohio 1984); *Cruz v. Collazo,* 84 F.R.D. 307 (D.P.R. 1979).

The *McFaul* court addressed the issue of whether a private right of action can be found in the Juvenile Justice Act using the four-part test articulated by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and modified by its progeny. That court found that no private right could be implied in the Juvenile Justice Act. *McFaul,* 599 F.Supp. at 1430. But Antonio Grenier does not have to rely on a direct right of action implied in the Juvenile Justice Act for the success of his claims. Grenier's claims are based on section 1983, which has was intended by Congress "to provide a remedy, to be broadly construed, against all forms of official violations of federally protected rights." *Monell v. New York City Department of Social Services,* 436 U.S. 658, 700–11, 98 S.Ct. 2018, 2040–46, 56 L.Ed.2d 611 (1978).

The distinction between private rights of action implied directly in federal statutes and private actions pursuant to

section 1983 is illuminated by consideration of *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). In *Thiboutot*, the Supreme Court interpreted section 1983 to permit private civil actions on non-constitutional claims based wholly on violations of federal laws by state actors. *Id.* at 4–8, 100 S.Ct. at 2504–06. If it were true that section 1983 actions to enforce "federally protected rights" were coextensive with implied private rights of action to enforce federal statutory rights, then the *Thiboutot* decision would have been completely unnecessary. Any plaintiff seeking to vindicate federal statutory rights could directly exercise the private rights of action implied in those statutes. If no such implied rights were available, then neither would the plaintiff have recourse to section 1983. In sum, the *Thiboutot* decision would have established a precedent of no practical importance. This Court is satisfied that *Thiboutot* provides the necessary rationale for plaintiffs wishing to use section 1983 claims to vindicate federally protected rights which could not otherwise be enforced through implied private causes of action.

The question is not, therefore, whether Congress implied a private right of action in the Juvenile Justice Act. The proper question is whether the Juvenile Justice Act creates federally protected rights which may be enforced through private actions under section 1983. There are two circumstances in which section 1983 claims are not available to remedy the infringement of federally created statutory rights. First, where the statute relied upon does not create enforceable rights. *See Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 19, 101 S.Ct. 1531, 1541, 67 L.Ed.2d 694 (1981). Second, where Congress has specifically foreclosed the pursuit of a remedy under section 1983. *See Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981).

Determining whether an enforceable right is created by a federal statute is easier in theory than in practice. The determining factor is, of course, congressional intent. The starting place for that inquiry is the statutory language. *National Sea Clammers*, 453 U.S. at 13, 101 S.Ct. at 2622. The Supreme Court has refused to find an enforceable right when a statute "does no more than express a congressional preference for certain kinds of treatment." *Pennhurst*, 451 U.S. at 19, 101 S.Ct. at 1541 (considering the scope and meaning of the Developmentally Disabled Assistance and Bill of Rights Act of 1975, 42 U.S.C. § 6000 *et seq.*). But when a statute creates an express entitlement, the Supreme Court recognizes an enforceable right. *See Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (discussing the attorneys' fees provision of the Civil Rights Act, 42 U.S.C. § 1988). This Court must therefore assess where a funding program like the Juvenile Justice Act, which is replete with specific mandates to the states, fits on this spectrum.

The *Pennhurst* Court distinguished section 6010 of the Developmentally Disabled Assistance Act from sections 6005, 6009, 6011, 6012, 6063, and 6067 of that Act on the basis that the former section does not expressly condition the receipt of federal funds by the states on adherence to the broad policy preferences stated in section 6010. Each of the other sections cited contain such express conditions. *Pennhurst*, 451 U.S. at 22–23, 101 S.Ct. at 1542–43. That distinction was a significant element in the Supreme Court's refusal to find enforceable rights in section 6010. The clear implication is that the presence of express conditions on federal grants, and the ability of the federal government to withhold funds when such conditions are not satisfied, indicates Congress' intent to create enforceable rights. *See also Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) (discussing an enforceable right created by an express rent limitation for public housing occupied by low-income residents).

Sections 223(a)(12) and (13) of the Juvenile Justice Act list a series of express requirements for state plans offered in pursuit of funding. These requirements were

"clearly intended to confer a special benefit upon a distinct class—detained juveniles." *Hendrickson*, 672 F.Supp. at 1134. The statute is unequivocal that the states must either meet these statutory requirements or lose their eligibility for funding. *See* 42 U.S.C. § 5633(a). Further, the statute expressly requires that

> [f]ailure to achieve compliance with the subsection (a)(12)(A) requirement within the three year time limitation shall terminate any State's eligibility for funding ... unless the Administrator determines that the State is in substantial compliance with the requirement, through achievement of deinstitutionalization of not less than 75 per centum of such juveniles or through removal of 100 percent of such juveniles from secure correctional facilities, and has made, through appropriate executive or legislative action, an unequivocal commitment to achieving full compliance within a reasonable time not exceeding two additional years.

42 U.S.C. § 5633(c). Thus, the Juvenile Justice Act has expressly conditioned the funding and reserved the power to withhold funding. This Court is therefore satisfied that Congress intended sections 5633(a)(12) and (13) to create enforceable rights for juvenile detainees.

The other possible basis for refusing Grenier's section 1983 action would be a clear congressional intent to foreclose the availability of such an action to enforce the Juvenile Justice Act. This Court must not preclude the availability of section 1983—"an independent safeguard against deprivations of federal constitutional and statutory rights"—lightly. *Smith v. Robinson*, 468 U.S. 992, 1012, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984). The best evidence of congressional intent to foreclose a section 1983 remedy is the availability of direct remedies under the statute. As the Supreme Court has reminded, "it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortgage Advisors, Inc. v. Lewis,*

444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979).

In *National Sea Clammers*, the "unusually elaborate enforcement provisions" of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*, which conferred the authority to sue for enforcement both on government officials and private citizens, were found to foreclose any cause of action under section 1983. 453 U.S. at 20–21, 101 S.Ct. at 247–48. In *Smith*, the Supreme Court held that where the extensive administrative procedures of the Education for the Handicapped Act are "available to a handicapped child asserting a right to a free appropriate public education ... the EHA is the exclusive avenue through which the child and his parents or guardian can pursue his claim." 468 U.S. at 1013, 104 S.Ct. at 3469.

The Supreme Court has clearly stated the rule governing these circumstances: "if there is a state deprivation of a 'right' secured by a federal statute, § 1983 provides a remedial cause of action unless the state actor demonstrates by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement." *Wright*, 479 U.S. at 423, 107 S.Ct. at 771. The power to cut off federal funds, even combined with other administrative review procedures, is simply insufficient to justify the radical step of precluding plaintiffs from pursuing section 1983 claims. *Id.* at 424–28, 107 S.Ct. at 771–73. Thus, when a statute does not itself provide a private remedy, and the only enforcement mechanism available is the cessation of funding by the federal government, the Supreme Court has held that section 1983 claims are not precluded. *See id.* at 427–29, 107 S.Ct. at 772–74.

The Juvenile Justice Act contains no private judicial remedies for private parties and no administrative procedures for redressing violations of the statute. The only available remedies are the mechanisms in sections 5633(a) and (c) for cutting off funds or blocking states' eligibility for funding. In short, Congress has not made clear its intent to foreclose section 1983

claims under the Juvenile Justice Act.[8] Grenier may use section 1983 to seek relief from the alleged injuries he has suffered as a result of the alleged infringement of his rights under the Juvenile Justice Act. Accordingly, the Motions to Dismiss will be denied with respect to section 1983 claims enforcing rights contained within the Juvenile Justice Act.

## IV. POTENTIAL LIABILITY OF COUNTY COMMISSIONERS

Defendants Kennebec County *et al.* claim that, even accepting as true the allegations that statutory and constitutional violations occurred when Grenier was confined to the Jail, the three County Commissioners cannot be liable because they "were not under any statutory obligation, nor did they possess the authority to take affirmative steps, [to] eradicate that policy or remedy its effects." Memorandum of Law in Support of Motion to Dismiss of Defendants Kennebec County, Nancy G. Rines, George M. Jabar, II and Wesley G. Kieltyka at 6–7 (Docket No. 6M).

This Court is convinced that Maine law does not place County Commissioners above sheriffs in a direct chain of command. There is no question that Defendant Hackett, as Sheriff of Kennebec County, is the chief county law enforcement officer. 30 M.R.S.A. § 1001(1)[9]. Among Hackett's statutory duties are the "custody and charge of the jail in his county and of all prisoners therein...." 30 M.R.S.A. § 1701. The County Commissioners may not remove the sheriff nor set his compensation if they disagree with the sheriff's actions. 30 M.R.S.A. §§ 2, 1111. Sheriffs need only obey law enforcement orders from the Governor. 30 M.R.S.A. § 1001(4). Further, the County Commissioners are expressly prohibited from giving orders directly to deputies or other subordinates of the sheriff. 30 M.R.S.A. § 1001(2).

But Defendants Kennebec County *et al.* go too far when they claim a complete separation of the County Commissioners from the law enforcement operations in their jurisdiction. As a general matter, the County Commissioners must meet with the sheriff twice each year to review county law enforcement activities. 30 M.R.S.A. § 1001(3). The purpose of the meeting is "to review activities of the sheriff's department, to coordinate law enforcement activities throughout the county and to resolve problems in law enforcement." *Id.* These meetings indicate some direct involvement of the County Commissioners in policy decision-making and the operations of the sheriff's department. This indication is reinforced by the requirement that the County Commissioners "shall regularly review the sheriff's operations and shall insure that the law enforcement functions required under the budget are adequately performed." 30 M.R.S.A. § 1001(2).

Further, the County Commissioners are given a direct role in guaranteeing the appropriate functioning of the county jail in their jurisdiction. Maine law requires that the Commissioners "examine the prison, take necessary precaution for the security of the prisoners, for the prevention of infection and sickness and for their accommodations." 30 M.R.S.A. § 1851. The Commissioners must also provide all supplies to the jail, 30 M.R.S.A. § 1854, and keep the jail building itself in proper repair. 30 M.R.S.A. § 301. Thus, the County Commissioners have a not insubstantial policy and review function in Kennebec County's law enforcement and correctional programs.

■ It is important to note that the three County Commissioners are sued only in their official capacities, and not as indi-

---

**8.** Review of the legislative history for the Juvenile Justice and Delinquency Prevention Act of 1974, *see* S.Rep. No. 1011, 93rd Cong., 2nd Sess. 5283–5340, and the Juvenile Justice Amendments of 1980, *see* H.Rep. No. 946, 96th Cong., 2nd Sess. 6098–6118, offers nothing to contradict this conclusion or the availability of enforceable rights in the Juvenile Justice Act.

**9.** Title 30 M.R.S.A. § 1 *et seq.* was recodified as Title 30–A M.R.S.A. § 1 *et seq.* effective March 1, 1989. Nonetheless, title 30 was effective at the time the cause of action arose and therefore governs the issues raised by this motion.

viduals.[10] A judgment against a public servant "in his official capacity" imposes liability not on the individual official but on the entity that official serves or represents, assuming that the governmental entity had notice and an opportunity to respond. *Brandon v. Holt*, 469 U.S. 464, 471–72, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985). Recovery in this case, assuming Grenier is successful, will be had from Kennebec County.[11]

A higher burden is placed on plaintiffs in "official capacity" suits under section 1983 than is set in "personal" or "individual capacity" suits. It is not sufficient to show that the individual official, acting under state law, caused the deprivation of a federal right. Rather, the plaintiff must show that the appropriate governmental "entity's 'policy or custom' must have played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). Thus, the liability of the County Commissioners in the present case depends on whether they were responsible for a policy in Kennebec County which resulted in the alleged injury to Grenier. *See Pembaur v. Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986).

The statutes which governed the responsibilities of County Commissioners make clear that the Commissioners had the authority to make some policy decisions with respect to issues surrounding the status and operation of the Jail. The question is one of fact whether the Commissioners created an injurious policy sufficient to subject them to liability under section 1983. The Complaint makes a series of specific allegations regarding policies in effect in Kennebec County which allegedly led to Grenier's injuries. *See* Complaint at ¶¶ 22–24, 26–30 (Docket No. 1). The Court cannot say, on this record, that no set of facts may be offered at trial which would support a judgment for Grenier on his section

1983 claim against Defendants Kennebec County *et al.* Accordingly, the Motion to Dismiss will be denied with respect to all remaining claims against Defendants Kennebec County *et al.*

ORDER

The Motions to Dismiss of Defendants Frank Hackett and Kennebec County *et al.* are GRANTED in the following regard:

(1) all claims are hereby dismissed to the extent that they seek injunctive relief;

(2) all claims are dismissed to the extent they seek relief under the Maine Civil Rights Act, 5 M.R.S.A. §§ 4681 & 4682; and,

(3) all claims are dismissed to the extent they seek relief under the Maine Juvenile Code, 15 M.R.S.A. § 3001 *et seq.*

The Motions to Dismiss of Defendants Frank Hackett and Defendants Kennebec County *et al.* are hereby DENIED with respect to all remaining claims.

SO ORDERED.

---

**10.** The same cannot be said of Defendant Hackett, who is sued in his official and individual capacities.

**11.** For this reason, the Court feels it is unnecessary to address the final ground for dismissal offered by Defendants Kennebec County *et al.*: the unavailability of punitive damages from persons acting in their official capacities.